STELLA GUTIERREZ *v.* GARETH D. THORNE, COMMISSIONER OF MENTAL RETARDATION (5520)

DUPONT, C. J., BORDEN and O'CONNELL, Js.

Argued December 2, 1987—decision released February 23, 1988

*Carl E. Cella,* with whom, on the brief, was *Mark D. Arons,* for the appellant (plaintiff).

*Carolyn K. Querijero,* assistant attorney general, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Francis J. MacGregor,* assistant attorney general, for the appellee (defendant).

BORDEN, J. The plaintiff brought this action against the defendant in his capacity as commissioner of mental retardation, on the basis of injuries allegedly sustained by the plaintiff while she was a client-participant in a department program. The dispositive issues in this appeal are (1) whether it was reasonably foreseeable that a male employee of the department of mental retardation, who was assigned to supervise the plaintiff's living situation and who was supplied by the department with a key to the plaintiff's apartment, would commit a sexual assault upon the plaintiff in that apartment, and (2) whether the assault by the employee was within the scope of his employment sufficient to attribute his liability to the defendant. The trial court concluded that the documents submitted in support of and in opposition to the defendant's motion for summary judgment on both issues showed that no genuine issue of material fact existed as to these questions, and that the defendant was entitled to judgment as a matter of law. Because we conclude, under the circumstances of this case, that there exists a factual dispute as to whether the assault was reasonably foreseeable, we find error.

This action was brought in three counts. The first count sounds in negligence, alleging that the injuries suffered by the plaintiff were proximately caused by the failure of the defendant commissioner to exercise due care in a number of instances, including, inter alia, the selection and supervision of the employee; the granting to the employee, a male staff member, of access to the plaintiff's apartment; and the failure to

become aware of the assaults.[1] This count also sought
to impose liability under a theory of respondeat supe-

---

[1] In Paragraph 9 of the first count of her complaint, the plaintiff set forth the following allegations of negligence by the defendant, his agents or servants:

"(a) The said Defendant, through his agents and employees failed to exercise reasonable care in selecting and hiring Steven Jones to serve as a Mental Retardation Aide I.

"(b) The Defendant, through his agents and servants, failed to exercise reasonable care in training and supervising Steven Jones in the performance of his duties.

"(c) The Defendant, through his agents and servants allowed Steven Jones, a male staff member, to have or obtain possession of a key to an apartment maintained by the Central Connecticut Regional Center for female occupants who were mentally incapacitated, thereby allowing him access to the apartment without the occupants consent, and placing the occupants, particularly the Plaintiff in this action, at the mercy of the said Steven Jones to utilize the absence of any other staff members in the privacy of the apartment to force his sexual desires upon the Plaintiff.

"(d) The Defendant, through his agents and servants, permitted male staff members to enter female occupied apartments alone and without the presence of other staff members, when he knew or should have known that such activity was likely to cause harm to the mentally incapacitated occupants, in this case, the Plaintiff, Stella Gutierrez.

"(e) The Defendant, his servants, agents, and employees violated the 'Department of Mental Retardation Rights of Mentally Retarded Persons Receiving Services', as published and given to the Plaintiff on November 10, 1981 with particular reference to subsection (a), subsection (b), subsection (e) - (6), and subsection (e) - (7), a copy of which publication is attached hereto and made a part hereof.

"(f) The Defendant, his servants, agents, and employees failed to become aware of the assaults which continued over a period of approximately six weeks, when in the exercise of reasonable care they should have been alerted to same and afforded their patient, the Plaintiff, Stella Gutierrez, the necessary help and assistance needed as well as eliminating the ability of Steven Jones to continue in the manner aforesaid.

"(g) The said Defendant, through his agents and employees failed to implement a policy and procedure of rotating staff members and employees, including Steven Jones, among and between the clients of the Central Connecticut Regional Center.

"(h) The said Defendant, through his agents and employees, failed to provide the Plaintiff herein with a reasonably safe and secure residence.

"(i) The said Defendant, through his agents and employees, failed to make certain that the Plaintiff's residence was reasonably safe and secure."

rior.[2] The second count, based on General Statutes § 17-206c,[3] repeats the allegations of the first count, and alleges that the defendant failed to guard and secure the plaintiff's personal dignity and right to privacy. In the third count, the plaintiff alleges that the acts of the defendant in failing to exercise due care violated her rights under the United States constitution and are redressable under 42 U.S.C. §§ 1983, 1985 and 1988.

The trial court addressed the legal issues in this case in the context of the defendant's motion for summary judgment. Summary judgment may be rendered if it is shown that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Orenstein* v. *Old Buckingham Corporation,* 205 Conn. 572, 574, 534 A.2d 1172 (1987). "In passing on a defendant's motion for summary judgment, the trial court is limited to deciding whether an issue of fact exists, but . . . it cannot try that issue if it does exist." *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 377, 260 A.2d 596 (1969).

The following undisputed facts were presented to the court for consideration in passing upon the defendant's motion for summary judgment. The plaintiff was referred to the department of mental retardation's central Connecticut regional center (CCRC) because an IQ test indicated that she was mildly retarded. She became

[2] Paragraph 7 of the first count of the complaint provided the basis for a claim of respondeat superior liability and alleged: "At all times mentioned herein, Steven Jones was acting as an employee or servant of the Commissioner of Mental Retardation."

[3] General Statutes § 17-206c provides in pertinent part: "Every patient treated in any facility for treatment of the mentally disordered shall receive humane and dignified treatment at all times, with full respect for his personal dignity and right to privacy. . . ." The defendant does not dispute that this statute provides a direct cause of action against him, and that sovereign immunity is waived by virtue of General Statutes § 19a-24.

a client of CCRC in the supervised apartment program in October, 1981, while living in a privately-owned apartment in Middletown. In this program, the plaintiff was to be supervised by state employees in how to keep her apartment, shop for her needs, budget her expenses, and perform other aspects of daily living.

In July, 1981, Steven Jones applied for a job as a mental retardation aide. In his application, Jones denied any criminal convictions or that any criminal charges were pending, which was verified through a state police fingerprint check. Upon being hired as a mental retardation aide, Jones went through a one-week orientation program and was supervised on a daily basis. Jones' job was to visit high-functioning retarded clients of CCRC living in supervised apartments and to assist them with budgeting and banking problems, shopping, and household management.

In December, 1981, Jones was assigned to visit the plaintiff. As a mental retardation aide, Jones was given a key to the plaintiff's apartment to enable him to enter the apartment in case of emergency. On December 19, while the plaintiff was taking a shower, Jones entered the plaintiff's apartment with the key provided to him and sexually assaulted the plaintiff. After the attack, Jones told the plaintiff that if she disclosed what had happened, she would lose her benefits. On three occasions in January, 1982, Jones returned to the plaintiff's apartment and sexually assaulted her again. Because she became afraid and upset, the plaintiff moved from her apartment and later told the police about Jones' conduct.

Jones was later arrested and pleaded guilty to two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (2). In the twenty years in which CCRC operated a community residential program prior to 1981, no employee had ever been

arrested or convicted of any crime of violence, including sexual assault, involving a CCRC client.

The defendant's motion for summary judgment and documents submitted in support thereof was directed to the issue of "whether it was reasonably foreseeable by the defendant that the plaintiff would be sexually assaulted by the defendant's employee." The trial court concluded that "an intentional tort of the general nature of that suffered by the plaintiff was not foreseeable as a matter of law." The trial court also concluded that the defendant could not be liable to the plaintiff based on the theory of respondeat superior, because Jones' actions which injured the plaintiff were not undertaken within the scope of his employment.

I

We first consider whether the trial court was correct in its conclusion that the defendant is not liable to the plaintiff on a theory of respondeat superior. We conclude that the court's conclusion in this regard was correct.

"The underlying rationale of the modern doctrine of respondeat superior . . . is that 'every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others *while they are engaged upon his business* and within the scope of their authority.' *Wolf* v. *Sulik,* 93 Conn. 431, 436, 106 A. 443 [1919]; *Durso* v. *A. D. Cozzolino, Inc.,* 128 Conn. 24, 27, 20 A.2d 392 [1941]. But *it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered* in order for the doctrine to apply." (Emphasis added.) *Mitchell* v. *Resto,* 157 Conn. 258, 262, 253 A.2d 25 (1968); see also *Cardona* v. *Valentin,* 160 Conn. 18, 22, 273 A.2d 697 (1970) (employer liable for wilful torts of

his employee when they are committed in furtherance of the employer's business).

In the present case, it is clear that Jones was not furthering the defendant's business interests when he sexually assaulted the plaintiff. He was engaging in criminal conduct which had no connection to the defendant's business of providing supervision and training to mentally retarded persons regarding daily living skills. Since there were no facts before the court from which it could conclude that Jones was furthering the defendant's interests, the defendant's nonliability under a respondeat superior theory was properly determined as a matter of law. See, e.g., *Levitz* v. *Jewish Home for the Aged, Inc.,* 156 Conn. 193, 239 A.2d 490 (1968). The plaintiff's statement in her affidavit that Jones was "on duty" at the the time of each assault, does not alter this conclusion, because his tortious conduct while on duty is not susceptible of an inference that he was acting to further his employer's interest. " 'In the course of employment" means while engaged in the service of the master, and it is not synonymous with the phrase "during the period covered by his employment.' " Id., 198, quoting *Pacific Telephone & Telegraph Co.* v. *White,* 104 F.2d 923, 926 (9th Cir. 1939); see also *Cardona* v. *Valentin,* supra, 22–23.

Our conclusion that the trial court was correct in determining that the defendant could not be found vicariously liable based solely upon Jones' conduct does not mean, however, that the court properly granted the defendant's motion for summary judgment. The plaintiff seeks to base the defendant's liability upon allegations of negligence which flow, not solely from Jones' conduct, but also from the defendant's acts or omissions, or those of his agents other than Jones, which allegedly resulted in the injuries to the plaintiff. See footnote 1, supra. As such, the several allegations of a failure to exercise due care on the part

of the defendant—each an independent claim of direct negligence—do not depend upon a successful theory of vicarious liability under the doctrine of respondeat superior. See, e.g., *Cardona* v. *Valentin,* supra (respondeat superior liability analyzed separately from liability for negligent failure to hire more employees); 53 Am. Jur. 2d, Master and Servant § 422, pp. 437–38 (theory of independent negligence becomes important where employee's act was not within scope of employment and respondeat superior liability unavailable). Therefore, the fact that the plaintiff failed to produce facts to show that Jones was acting within the scope of employment, would not entitle the defendant to judgment as a matter of law on the plaintiff's claims of negligent acts or omissions of the defendant which proximately resulted in the plaintiff's injuries.

II

We therefore turn to the issue of foreseeability, which was the principal basis of the trial court's decision, and which forms the crux of the appeal as presented by the parties. "The test that is often applied in determining whether there exists a duty to use care is the foreseeability of harm. 'Would the ordinarily prudent man in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' This does not mean foreseeability of any harm whatsoever or foreseeability that the particular injury which resulted would occur. It is, in short, the foreseeability or anticipation that harm of the general nature of that suffered would be likely to result, which gives rise to a duty to use due care, breach of which might constitute negligence." (Footnotes omitted.) D. Wright & J. Fitzgerald, Connecticut Law of Torts (2d Ed.) § 29. The matter of foreseeability is a question of proximate cause; *Burns* v. *Gleason Plant Security, Inc.,* 10 Conn. App. 480, 485, 523 A.2d 940 (1987); and "the question

·of proximate cause is ordinarily a question of fact for the trier." Id. " 'Conclusions of proximate cause are to be drawn by the jury and not by the court.' *Fox* v. *Mason,* 189 Conn. 484, 489, 456 A.2d 1196 (1983). ' "It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." *Marley* v. *New England Transportation Co.,* 133 Conn. 586, 591, 53 A.2d 296 [1947] . . . .' *Busko* v. *DeFilippo,* [162 Conn. 462, 466, 294 A.2d 510 (1972)]." *Trzcinski* v. *Richey,* 190 Conn. 285, 295, 460 A.2d 1269 (1983); *Burns* v. *Gleason Plant Security, Inc.,* supra.

In the present case, we conclude that, even under facts which are not in dispute, the question of foreseeability is not such as would lead to only one conclusion; rather, under the circumstances of this case, the foreseeability of whether the defendant's conduct in permitting Jones to have a key to the plaintiff's apartment would result in a sexual assault upon the plaintiff is a question to be resolved by the trier of fact. In reaching this conclusion, we note several critical aspects of this case which must be carefully weighed, and therefore the inferences to be drawn from these facts cannot be resolved by summary judgment.

The plaintiff is a woman whose mental functioning is slightly impaired. She is a client of the department of mental retardation receiving the benefits of a state program to assist high-functioning mentally retarded persons in an independent living situation. The department of mental retardation's rules notwithstanding, the defendant, through department employees, permitted Jones, a male employee, to have complete, unfettered and unsupervised access to the plaintiff's apartment. The plaintiff was in a position where it is unlikely that she could resist Jones' entry into her private apartment.

This impaired ability to resist arose both from the unrestricted nature of the access granted to Jones by virtue of his possession of a key to the plaintiff's apartment, and from the particular vulnerability of the plaintiff due to the superior power accorded Jones in his relationship with the plaintiff by virtue of their provider-client relationship, her mental impairment, and his ability to threaten a termination of her state services. Presented with these facts, the court erred in granting summary judgment because the conclusion to be drawn from these facts as to whether it was reasonably foreseeable that the plaintiff would be sexually assaulted by the defendant's employee is precisely the type of determination most appropriately left to the trier of fact.[4]

---

[4] In addressing the issue of foreseeability, neither the trial court nor the parties examined the matter in the context of each particular specification of negligence. See footnote 1, supra. Our discussion illustrates that the facts are sufficiently in dispute on the matter of foreseeability in the context of a claim of negligent granting of access to preclude summary judgment on the entire complaint and to warrant further proceedings. We note that in response to the defendant's motion for summary judgment, the plaintiff offered no evidence from which it could be concluded that Jones' acts were a foreseeable result of the defendant's conduct with respect to hiring, selection, or training of Jones, or the defendant's failure to become aware of the wrongful acts, or the defendant's failure to implement a policy of rotating staff members or employees. While the case should continue in conformity with this opinion we express no opinion whether each of these specifications of negligence should ultimately go the the jury for consideration. Cf. *State* v. *Santangelo,* 205 Conn. 578, 594, 534 A.2d 1175 (1987).

In addition, we note that both the trial court and the parties appear to have treated the first two counts of the plaintiff's complaint as essentially identical claims of negligence with respect to the motion for summary judgment. We express no view as to the correctness of this position.

Finally, neither the trial court nor the parties have separately addressed the plaintiff's third count, that of a deprivation of constitutional rights under color of law. We note that nowhere has the plaintiff identified the specific constitutional theory under which she seeks redress. We note, however, that an action brought under 42 U.S.C. § 1983 involves principles of law, both as matters of proof and defense, which are not necessarily applicable to state law tort actions. Accordingly, we express no opinion as to the applicability of our consideration of the issues in this appeal to the plaintiff's federal law cause of action.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.