[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT(#126)
The plaintiff John Doe, Jr.[1], a minor, through his father CT Page 86-R ("Doe Sr."), has brought this action against X Corporation seeking damages as a result of allegedly having been sexually assaulted in August of 1991 by G.G., one of his sixth grade teachers at a private religious school operated by X. Upon learning that Doe, Sr. had complained to the police and reported the incident to the school, G.G. committed suicide in September of :1991, and neither he nor his estate is a party to this action. The plaintiff's revised, complaint alleges that X negligently hired and supervised G.G. and failed to warn, students of his dangerous propensities. The plaintiff therefore claims that X is responsible for the damages he has sustained as the result of G.G.'s actions.
The defendant has filed the present motion for summary judgment, supported by a memorandum of law and the affidavits of the defendant's director ("T.S.") and principal ("M.F."). The plaintiff has filed a memorandum of law in opposition to the motion for summary judgment and supporting documents, and the defendant filed a reply memorandum of law and supplemental documents.
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book CT Page 86-S § 384; Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994); Telesco v. Telesco, 187 Conn. 715,447 A.2d 752 (1982); Yanow v. Teal Industries, Inc., 178 Conn. 262,422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
The plaintiff's claims are based on his allegations that the defendant knew or should have known that: (1) the school was comprised of vulnerable students, unsupervised by their parents during school and extracurricular activities; (2) prior to his hiring and/or during employment, G.G. exhibited an inclination CT Page 86-T and propensity to molest minors; (3) G.G. developed inappropriately close relationships with many male students; and (4) G.G. invited minor children off the premises with him, touched children, and behaved and spoke in a way that should have caused the defendant to suspect that he posed a danger to them. The plaintiff specifically claims that the defendant was negligent in that it: (1) hired G.G. without a reasonable investigation; (2) failed to supervise and control him such that young male students were protected; (3) continued to employ him even when it knew or should have known that he had dangerous and deviant propensities; and (4) failed to adequately warn and counsel students about these tendencies.
The defendant contends that there are no genuine issues of material fact in dispute regarding its assertions that it had no prior knowledge or reason to know that G.G. might be likely to sexually assault one if its students, either prior to its having hired G.G. or during the course of his employment, that it had reasonably investigated his background before hiring him, and that it supervised him appropriately. To support these assertions, it relies on the affidavits of T.S. and M.F. Because it contends that the undisputed facts establish that G.G.'s sexual assault on the plaintiff could not have been foreseen or prevented by X, it argues that it is entitled to judgment as a matter of law. CT Page 86-U
In his affidavit, T.S. states that prior to G.G.'s hiring, he personally interviewed G.G. and spoke with one reference regarding his moral character.[2] T.S. also states that, prior to September of 1991, he had heard and observed nothing that would have given him any reason to suspect that G.G. could pose a danger to his students. T.S. stated that G.G. had a positive relationship with students, including the plaintiff, providing extra outreach and inspiring his students to do well in math and science. None of these assertions is directly contradicted by the plaintiff.
M.F., the school's principal, states in her affidavit that she utilized a teacher job placement service she had used in the past, that she reviewed G.G.'s resume, that she personally interviewed G.G., that she spoke with two principals from the one school at which G.G. had previously been a full time teacher, and that the principals recommended G.G. and told her that they did not know of anything negative about G.G. of which she should be aware. M.F. stated that neither these contacts nor any others produced any information whatever suggesting any inappropriate behavior of the sort that would suggest a tendency toward pedophilia prior to September 1991, when she learned of the plaintiff's allegations, and that G.G. had a positive relationship with students. None of these assertions is directly contradicted by the plaintiff, and the defendant argues that CT Page 86-V these facts demonstrate that the defendant conducted a reasonable investigation of G.G. that produced no negative information about his character or fitness. It also notes that the plaintiff has not introduced evidence tending to show that additional inquiries would have resulted in its uncovering any such information.
The plaintiff correctly points out that motions for summary judgment are generally disfavored in negligence cases. SeeSpencer v. Good Earth Restaurant Corp., 164 Conn. 194, 199,319 A.2d 403 (1972), in which the court stated that "[i]ssues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." Id. InSpencer, however "[t]he situation was peculiarly one which required an evidentiary hearing for a trial of the issue of fact in which the trier would be called on to determine the credibility of witnesses and the weight to be given to their testimony." Id.
By contrast, the issues here do not turn on the credibility of witnesses and the weight to be given to their testimony. In order to prove the negligence in hiring or in supervision that is the basis of the plaintiff's claim, the plaintiff must be able to prove that prior to August 15, 1991, the defendant either had or should have had knowledge or notice of G.G.'s propensity toward sexual misconduct with boys. The question here is not whether the CT Page 86-W court can believe that the defendant's affiants did what they say they did, which is not in dispute, but rather whether what they did, combined with what the plaintiff asserts that they did not do, could possibly support a conclusion that the defendant breached a duty of care to the plaintiff. Put another way, the question is whether there is any factual dispute over whether harm of the sort sustained by the plaintiff was reasonably foreseeable by the defendant in the exercise of due care, and summary judgment is not inappropriate here merely because the underlying claim sounds in negligence if the defendant can demonstrate that there are no facts in dispute concerning the lack of foreseeability of G.G.'s molestation of the plaintiff.
The court is also aware, however, that our Appellate Court has advised caution in granting summary judgment in cases where, as here, the issue is one of the foreseeability of harm of the sort sustained by the plaintiff. In Gutierrez v. Thorne,13 Conn. App. 493 (1988), that court considered a motion for summary judgment in the context of a claim that the plaintiff, a retarded woman who resided in an apartment arranged for her by certain of the defendants and was sexually assaulted by an employee who was given a key and thus free access to the plaintiff's apartment, was injured as the result of the negligence of the defendants in providing the employee with the key.
"The test that is often applied in determining whether there CT Page 86-X exists a duty to use care is the foreseeability of harm. Would the ordinarily prudent man in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? This does not mean foreseeability of any harm whatsoever or foreseeability that the particular injury which resulted would occur. It is, in short, the foreseeability or anticipation that harm of the general nature of that suffered would be likely to result, which gives rise to a duty to use due care, breach of which might constitute negligence. The matter of foreseeability is a question of proximate cause, [and] the question of proximate cause is ordinarily a question of fact for the trier. Id. Conclusions of proximate cause are to be drawn by the jury and not by the court. It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Footnotes and internal quotations omitted). Gutierrez, supra, at 500-501.
The Appellate Court concluded that "under the circumstances of this case, the foreseeability of whether the defendant's conduct in permitting Jones to have a key to the plaintiff's apartment would result in a sexual assault upon someone in the plaintiff's position was a question to be resolved by the trier CT Page 86-Y of fact. In reaching this conclusion, we note several critical aspects of this case which must be carefully weighed, and therefore the inferences to be drawn from these facts cannot be resolved by summary judgment." Id. Those aspects included the facts that the:
 "plaintiff is a woman whose mental functioning is slightly impaired. She is a client of the department of mental retardation receiving the benefits of a state program to assist high-functioning mentally retarded persons in an independent living situation. The department of mental retardation's rules notwithstanding, the defendant, through department employees, permitted Jones, a male employee, to have complete, unfettered and unsupervised access to the plaintiff's apartment. The plaintiff was in a position where it is unlikely that she could resist Jones' entry into her private apartment.
 This impaired ability to resist arose both from the unrestricted nature of the access granted to Jones by virtue of his possession of a key to the plaintiff's apartment, and from the particular vulnerability of the plaintiff due to the superior power accorded Jones in his relationship with the plaintiff by virtue of their provider-client relationship, her mental impairment, and his ability to threaten a termination of her state services. Presented with these facts, the court erred in CT Page 86-Z granting summary judgment because the conclusion to be drawn from these facts as to whether it was reasonably foreseeable that the plaintiff would be sexually assaulted by the defendant's employee is precisely the type of determination most appropriately left to the trier of fact." Gutierrez, supra at 501-502.
With such cautions in mind, it is important to scrutinize with care the materials submitted in opposition to summary judgment here in order to determine whether the issue of foreseeability in this case is one that ought to be submitted to the trier of fact. In his attempt to show that there are issues in dispute, the plaintiff also submitted the affidavits of T.S. and M.F., as well as that of L.M., the step-parent of another student, but he relies primarily upon excerpts from uncertified deposition testimony.
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256,106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that CT Page 86-AA there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Citations omitted; internal quotation marks omitted.) Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202-03, 663 A.2d 1001 (1995). "The existence of the genuine issue of material fact must be demonstrated by counter-affidavits and concrete evidence." 2830Whitney Avenue Corp. v. Heritage Canal Development Associates,Inc., 33 Conn. App. 563, 567, 636 A.2d 1377 (1994).
"Reliance on deposition testimony on a motion for summary judgment is generally inappropriate." Funaro v. Mount MansfieldCo., Superior Court, judicial district of New Haven, Docket No. 318105 (July 15, 1994, Martin, J.; 12 Conn. L. Rptr. 117, 118). "Uncertified deposition transcripts are not acceptable in support of, or in opposition to, a motion for summary judgment . . . . Uncertified copies of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book § 380. . . . Some superior courts [sic] judges have even held that certified deposition transcripts are not acceptable in support of, or in opposition to, a motion for summary judgment." (Citations omitted; internal quotation marks omitted.) State Street Mortgage Co. v. Piscitelli, Superior Court, judicial district of Ansonia-Milford at Milford, Docket CT Page 86-BB No. 043399 (February 22, 1996, Curran, J.). This is because the "primary purpose of a deposition taken pursuant to [the Practice Book rules] is discovery. . . . A response to a question propounded in a deposition is not a judicial admission." (Internal quotation marks omitted.) Esposito v. Wethered, 4 Conn. App. 641,645, 496 A.2d 222 (1985). "[T]he allowable scope of inquiry at a discovery deposition clearly exceeds the boundaries of admissible evidence." Sanderson v. Steve Snyder Enterprises, Inc.,196 Conn. 134, 139, 491 A.2d 389 (1985). If evidence is inadmissible at trial, it is not sufficient to support a motion for summary judgment. Farrell v. Farrell, 182 Conn. 34, 39, 438 A.2d 415
(1980). The excerpted uncertified transcripts of the depositions of Doe, Jr., Doe, Sr., Ms McC. (plaintiff's homeroom teacher), M.F., and L.M. (the stepparent of another student, whose affidavit has also been submitted), should therefore not be considered in determining whether the facts asserted by the defendant in its affidavits are in dispute.
Even if the deposition excerpts proffered by the plaintiff are considered, however, they do not serve to dispute the facts submitted by the defendant regarding its actions in hiring and supervising G.G., and they do not undermine the plaintiff's claim that those facts entitle it to judgment as a matter of law. For example, citing excerpts from the deposition of M.F., the school principal, to argue that the pre-hiring investigation was CT Page 86-CC inadequate, the plaintiff states that M.F. admitted that she had no idea of what background checks the Office of Catholic Schools does, that the usual workshop for new teachers was waived in G.G.'s case and that G.G's recommendations were "fairly good."[3] The plaintiff also cites M.F.'s acknowledgement that she did not check references at the summer camps at which G.G. had worked because his hiring was on short notice.
The plaintiff's statement regarding the background checks of the Office of Catholic Schools is specious. What M.F. in fact states in her deposition is only that she does not know how the Office of Catholic Schools spends the $10.00 processing fee.[4]
To read this as meaning that M.F. was unaware of what background checks are performed by the Office of Catholic Schools is misleading, and the deposition reveals no direct questioning of M.F. regarding background checks undertaken by that Office. Moreover, there has been no showing that her not knowing what background checks were performed would have any significance, in light of the undisputed facts as to the nature of the pre-hiring inquiry that was done by M.F. and T.S.
The waiver of the workshop similarly does not does not raise an issue of fact regarding negligent investigation, hiring, or supervision. The plaintiff has put forward no facts that would indicate that the defendant would have learned of G.G.'s CT Page 86-DD dangerous propensities if G.G. had attended the workshop or that the workshop was in any way related to sexual misconduct or to promulgating standards for teacher-student relations. Indeed, the plaintiff's deposition questioning of M.F. reveals only that the workshop was intended to acquaint new teachers with Catholic philosophy.
The plaintiff has presented no facts tending to show that it was unreasonable for the school to contact the two principals at a prior teaching position as well as one other character reference while electing to forego contacting temporary employers such as summer camps. He has presented no affidavit by anyone who claims expertise in this field to the effect that the pre-hiring investigation was inadequate. Moreover, he has introduced no facts which would indicate that the defendant would have had notice of G.G.'s inclination toward pedophilia if it had contacted the summer camps listed or in any other way expanded its pre-hiring inquiries. There has been no evidence that there had been incidents of sexual misconduct at these camps or that anyone there had asserted any concerns about G.G.'s conduct there. The plaintiff has simply provided the court with no factual basis upon which any reasonable tier of fact could conclude that the defendant was negligent in its hiring process and that the kind of activity G.G. is alleged to have engaged in with the plaintiff was or should have been foreseeable prior to its having hired him. CT Page 86-EE
Other factors that the plaintiff argues should have made the defendant suspicious of inappropriate behavior by G.G. relate more to the allegation of negligence in supervision of G.G. and include the claims that: (1) M.F. had attended seminars that addressed sexual assault by teachers; (2) M.F. was aware that G.G. used vulgar language and made remarks demeaning to females; (3) G.G. had allowed students from other schools to join the school's hockey team; (4) that G.G. had received a "fair" mid-year evaluation, and that there had been no formal follow-up review of his performance; (5) M.F. knew that G.G. was providing extra outreach to students; (6) M.F. was aware that G.G. had provided funds to enable the plaintiff to participate in a school trip and had not told Doe Sr. about this; and (7) after G.G.'s suicide, M.F. had expressed concern because G.G. was "too friendly with too many boys".
The fact that M.F. had attended seminars on sexual abuse does not serve to dispute M.F.'s assertion that no information that would have enabled her to foresee G.G.'s conduct had ever come to her attention. The facts that G.G. had been reported to use the phrase "shut up",[5] to opine that "boys are smarter than girls", and to allow students from other schools to join the hockey team, while perhaps justifying his "fair" mid-year evaluation, do not undermine the defendant's position with regard CT Page 86-FF to summary judgment. The plaintiff has offered no explanation as to how the nature of the evaluation or following it with a later review might have enabled the defendant to foresee or predict the likelihood of a sexual assault. As for the "fair evaluation" itself, such a generalization of mediocrity, without more, can hardly be said to indicate a propensity to sexually molest children. Moreover, the plaintiff has not shown that the specific recommendations made to G.G. in the course of this evaluation have anything to do with the behavioral issues relevant to this case. Similarly, G.G.'s outreach to students, in and of itself or combined with other facts introduced by the plaintiff, do not portend pedophilia.
The plaintiff has offered no basis on which the court could conclude that G.G.'s giving money to the minor plaintiff so that he could attend a school field trip give rise to a genuine factual dispute over whether this action represents a level of suspicious behavior such that the defendant had notice of G.G.'s harmful propensities. The fact that the defendant did not inform Doe, Sr. of G.G.'s spending money on his son does not amount to negligent supervision, nor has the plaintiff put forth any statement of Doe, Sr. asserting that he would have been concerned about G.G.'s relationship with his son had he known these facts. When made aware of this situation, the defendant told G.G. not to advance funds for any student again without first obtaining the CT Page 86-GG principal's approval, and there has been no suggestion that he advanced funds on any student's behalf thereafter.
The statement attributed by Doe, Sr. to M.F.[6] after G.G.'s suicide to the effect that she had concerns because G.G. was too friendly with too many boys is not sufficient to raise a genuine issue of material fact. Even if she made the statement, which she does not recall making, it does not controvert the defendant's claim that it had no notice of G.G.'s deviant propensities before the incident. Moreover, given the context in which the statement was made, shortly after the suicide, the import of the statement is ambiguous at best.
The plaintiff also relies on an uncertified deposition of the minor plaintiff in which he describes G.G.'s behavior toward him in class, suggesting that the facts that G.G. would favor the plaintiff in class, rub his shoulders, tap him on the back, and sit down and work with him should have aroused suspicion. Had these facts been brought to the defendant's attention before the assault, they may well have formed a sufficient basis for disputing the defendant's assertion that it had no way of foreseeing G.G.'s misconduct. The minor plaintiff himself, however, has stated that he did not view this touching as inappropriate at the time of its occurrence. More significantly, there has been absolutely no suggestion that the plaintiff made CT Page 86-HH anyone, including the defendant aware of this touching until after G.G.'s suicide.
Finally, the plaintiff points to the statements of L.M., a step-parent of another student, to the effect that: (1) G.G. was nervous at parents' night; (2) he knew G.G. spent money on the students;(3) based on his observations, G.G. was not right or normal; (4) he knew G.G. was single and had no girlfriend; (5) he suspected G.G. might he homosexual or attracted to young boys; and (6) he thought it seemed unusual that a grown man would want to spend so much time with young boys.
L.M. admits, however, that he himself never saw G.G. touch anyone inappropriately and that he himself never hard or saw G.G. say or do anything sexually inappropriate. Significantly, L.M. states that he never told the defendant of any of his professed concerns about G.G., and he apparently continued to allow his stepson to associated with G.G. outside of school.
Additionally, the fact that L.M. thought G.G. was homosexual and therefore "not right" does not serve to dispute the defendant's assertion that it could not have foreseen that G.G. would sexually molest a student. L.M.'s apparent perception that G.G. was at least "weird" and probably also homosexual[7] does not raise a factual dispute regarding the foreseeability of CT Page 86-II G.G.'s assault on the plaintiff. This court will not accept the conclusion that a person someone believes to be homosexual should be presumed to be a pedophile. See, e.g., Doe v. BritishUniversities North America Club, 788 F. Sup. 1286 (D.Conn. 1992) (there is no presumption that homosexuals are predisposed toward molesting or sexually assaulting minors). The plaintiff has offered no basis for his conclusion that a reasonable person in the defendant's position would conclude, on the basis of the materials he has offered in opposition to summary judgment, that there remains a factual dispute over whether, given the information available to the defendant, a teacher who, prior to the August 1991 incident, related to students in the way G.G. did, should have been viewed by the defendant as a potential pedophile.
This court understands and respects the Appellate Court's caution to trial courts facing situations such as this, as expressed in Gutierrez, supra. The court in Nutt v. Norwich RomanCatholic Diocese, 921 F. Sup. 66, 76 (D.Conn. 1995), however, was also faced with a situation quite similar to that presented by his case, and it eventually granted summary judgment on the claim of negligence in hiring and supervision, answering in the negative the question: "Would the ordinarily prudent [person] in the position of the defendant, knowing what he knew or should have known, anticipate that harm of the general nature of that CT Page 86-JJ suffered was likely to result?" Id., 74. See, also, Bendowski v.Quinnipiac College, 1996 Conn. Super Lexis 2589.
In Gutierriez, the particular vulnerability of the plaintiff, which was well known to the defendant-employers, and the giving of the key to her apartment to the employee, were critical and undisputed facts that left open the ultimate question of whether it was foreseeable that the employee would use the unlimited access thus given to him in a way that could cause harm. In Nutt,
however, which, like this case, also involved allegations of negligence on the part of a church and diocese in the hiring and/or supervision of a priest who later allegedly sexually abused the plaintiff, the court granted summary judgment in favor of the church and diocese. The court concluded that the plaintiff had presented no evidence to contradict the defendant's affidavits to the effect they had no prior notice of the offending priest's sexual misconduct.
Here, although the plaintiff has produced some documents in opposition to summary judgment, it has presented nothing in way of admissible evidence to contradict the defendant's assertions that, both before and during its employment of him, it neither knew nor should have known of any information that would have suggested G.G.'s propensity toward sexual misconduct. All of the suggestions that the defendant should have foreseen that harm of CT Page 86-KK the nature of that suffered by the plaintiff was likely to result are based not on facts but on mere speculation at best, and, at worst, in the case of the L.M. affidavit and deposition, homophobic prejudice. While the undisputed facts include the certainty that the plaintiff was seriously harmed by G.G.'s conduct, those same facts demonstrate that the harm was not foreseeable to this defendant. The defendant is thus entitled to judgment as a matter of law, and its motion for summary judgment is therefore granted.
Jonathan E. Silbert, Judge