[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action in five counts brought by a former tenant against her former landlord. The first count alleges an entry and detainer as defined in General Statutes §§ 47a-43 (2), (3), and (4).[1] The remaining counts assert actions for wrongful entry in violation of General Statutes § 47a-16;[2] emotional distress; theft pursuant to General statutes § 52-564;[3] and unfair trade practice, pursuant to General Statutes 110a, et seq.[4]
The defendant has answered and specifically denied that its actions constituted violation of enumerated statutes or that its action caused the plaintiff emotional distress. As to all other allegations, the defendant has pled insufficient knowledge and left the plaintiff to her proof.
At trial, only the plaintiff and her mother testified. I found them to be credible witnesses. The plaintiff, Tawana Conaway (hereinafter sometimes "Conaway"), sustained her burden of proof as to the following facts: On November 18, 1998, the plaintiff entered into an oral lease with the defendant's superintendent, Joaquim Perez (hereinafter sometimes "Perez") for apartment A-6 at 84 Forest Street in Hartford. Conaway was responding to a newspaper ad which identified Perez as the person to contact.
Two weeks after the plaintiff took possession with her two-year old daughter, the apartment's toilet became inoperable. The plaintiff contacted Perez, who lived across the hall from her, and she requested repair of the toilet as soon as possible. Perez said that he would call a plumber the next day, but the toilet was not repaired. On December 17, 1997, Conaway moved in with the plaintiff's mother until the toilet could be repaired. The plaintiff took some clothing with her, but left all of her furniture and other belongings in the apartment. While living CT Page 14810 with her mother, the plaintiff kept in contact with Perez on an almost daily basis about the toilet repair. Perez also called the plaintiff and told her that he needed the rent for January before the repair would be made. Conaway frequently checked in on her apartment and collected her mail. In one such visit to her apartment, approximately a month and a half after the toilet ceased to operate, she discovered a different name on the mailbox and that her key to the apartment no longer worked. Perez was contacted, and he admitted that he had removed the plaintiff's furniture and belongings and had leased the apartment to another tenant. The police were called and arrived within a short time. Perez stated that the plaintiff owed a month's rent, that he should have served papers, that he had moved the property out of the apartment and that he "did it the wrong way." Perez also talked on his cell phone in the presence of Conaway stated, "I did it the wrong way.
Conaway spoke to a person at the defendant's management office who told her that Perez was the superintendent. She was also told that management had no knowledge that she was in the apartment and had thought the apartment was empty.
The defendant did not controvert evidence that Perez was its superintendent, but rather the defendant contends that it is not liable for the actions of Perez because there is no evidence that he acted within the scope of his employment or that his actions were condoned or authorized by the defendant.
"The underlying rationale of the modern doctrine of respondeat superior . . . is that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority." (Internal quotation marks omitted.) Mitchell v. Resto, 157 Conn. 258, 262, 253 A.2d 25
(1968); Gutierrez v. Thorne, 13 Conn. App. 493, 498, 537 A.2d 527
(1988).
The Supreme Court "ha[s] long adhered to the principle that in order to hold an employer liable for the intentional torts of his employee, the employee must be acting within the scope of his employment and in furtherance of the employer's business." A-GFoods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 208,579 A.2d 69. "The master is not held on any theory that he personally interferes to cause the injury. It is simply on the ground of CT Page 14811 public policy, which requires that he shall be held responsible for the acts of those whom he employs, done in and about his business, even though such acts are directly in conflict with the orders which he has given them on the subject." (Internal quotation marks omitted.) Larsen Chelsey Realty Co. v. Larsen,232 Conn. 480, 500, 656 A.2d 1009 (1995). "[I]t must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine [of respondeat superior] to apply." A-G Foods, Inc. v. PepperidgeFarm, Inc., supra, 216 Conn. 208. "[T]he vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business. . . ." Id., 210.
In Pelletier v. Bibiles, 154 Conn. 544, 227 A.2d 251 (1967), the Supreme Court held that a jury could reasonably conclude that a store employee, who assaulted a customer who had blown a straw wrapper onto the floor, was acting within the scope of his employment. Id., 548-49. The court stated that the employee's behavior was "an extremely forceful, although misguided, method of discouraging patrons of the [store], including the plaintiff, from causing disturbances on the premises." Id., 548.
In Mullen v. Horton, 46 Conn. App. 759, 700 A.2d 1377 (1997), a priest, who was also a psychologist, began a sexual relationship with a woman who received counseling from him both at his church office and at his office in a therapy center. There the court held that "the trier of fact could reasonably have found that Horton's sexual relations with the plaintiff during their pastoral-psychological counseling sessions, were a `misguided effort' at psychologically and spiritually counseling the plaintiff, rather than an abandonment of the counseling." Id., 767. The court compared the case to Glucksman v. Walters,38 Conn. App. 140, 659 A.2d 1217, cert. denied, 235 Conn. 914,665 A.2d 608 (1995), in which the court reversed the trial court's directed verdict in favor of the defendant, the Young Men's Christian Association (YMCA). In Glucksman, a YMCA employee, who was not on duty, assaulted a basketball player who committed a foul on the YMCA court. Id., 141-48. The court held that "a jury could have found that Walter's attack arose out of his responsibilities as an employee of the YMCA." Id., 148.
By contrast, in A-G Foods, Inc. v. Pepperidge Farm, Inc., supra 216 Conn. 200, the plaintiff, a food store chain, sued the CT Page 14812 defendant, a distributor of bakery goods, alleging that one of the defendant's drivers, Anthony Spinelli, had charged the plaintiff for goods Spinelli had not delivered. Id., 202. The Supreme Court concluded that the trial court did not abuse its discretion by ruling in favor the defendant as a matter of law because "there was no evidence to indicate that Spinelli, by his theft, intended to serve Pepperidge Farm's interests at all."
Similarly, in Gutierrez v. Thorne, supra, 13 Conn. App. 493, the Appellate Court affirmed the trial court's grant of summary judgment where an employee of the commissioner of mental retardation sexually assaulted a mentally ill woman whom he was supposed to assist with errands. The court stated, "it is clear that Jones was not furthering the defendant's business interests when he sexually assaulted the plaintiff." Id., 499.
I find that like the agents in Pelletier, Mullen, andGluckman, Perez was attending to the defendant landlord's affairs. He acknowledged, however, that he did it the wrong way when he removed the plaintiff's property and should, instead, have served her with papers. The superintendent's actions, when the plaintiff failed to pay rent for January, were a "misguided effort" to further his principal's interests. See Mullen v.Horton, supra, 46 Conn. App. 767.. Pelletier, Mullen, andGluckman do not require that the principal authorize, condone or know of the misguided effort.
As to liability, I find in favor of the plaintiff on her claims set forth in Count One (Entry and Detainer), Count Two (Wrongful Entry pursuant to General Statutes § 47a-16) and Count Three (Emotional Distress). The plaintiff's original possession of the premises was rightful; the only proper mode of eviction available to the defendant was that of summary process; the plaintiff had not abandoned the premises; Perez violated General Statutes §§ 47a-16 and 47a-43 when he removed her personal property from her apartment, changed the locks and gave possession to another tenant.
I find in favor of the defendant on Counts Four and Five. As to Count Four, claiming treble damages for theft in violation of General Statutes § 52-564, that statute applies to any person who "steals" property of another, or "knowingly" receives and conceals "stolen" property. The plaintiff failed to sustain her burden that the defendant landlord stole or knowingly received and concealed her property. CT Page 14813
As to Count Five, claiming an unfair trade practice in violation of General Statutes § 42-110a et seq., the plaintiff failed to sustain her burden to prove that the defendant authorized Perez's tortuous conduct.
 It is a general rule of substantive law that corporations, like individuals, are liable for their torts. . . . This liability arises apart from, and is distinguishable, from, liability under the theory of respondeat superior. . . .The theory of respondeat superior attaches liability to a principal merely because the agent committed a tort while acting within the scope of his employment. "It refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." W. Prosser W. Keeton, Torts (5th Ed. 1984) § 70, p. 502. A principal may be directly liable, however, for the acts of its agents that it authorizes or ratifies. Id., pp. 501-502; 1 Restatement (Second), supra, § 212 (principal liable for authorized conduct) and § 218 (principal liable for ratified conduct). "In order to find that a corporation has committed an intentional act, a court or jury must find that the corporation committed, directed or ratified the intentional act."
Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480 (1995)
"In Connecticut, punitive damages cannot be awarded against a principal where . . . its liability is based solely on a theory of respondeat superior or vicarious liability. Maisenbacker v.Society Concordia, 71 Conn. 369, [42 A.2d 67] (1899)." Kalinowskiv. Waddell Reed, Inc., Superior Court, judicial district of Waterbury, Docket No. 146924 (October 14, 1998, Sheldon, J.)
In Mullen v. Horton, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 533347 (October 18, 1995, Hennessey, J.), rev'd on other grounds, 46 Conn. App. 759,700 A.2d 1377 (1997), the court concluded that actual authority was necessary to apply the doctrine of respondeat superior to a CUTPA claim. In that case, the plaintiff alleged that a priest had sexually abused her, and that the defendants, who had employed the priest, were vicariously liable. The court held that "the doctrine of respondeat superior [was] inapplicable as a CT Page 14814 matter of law . . . to convert [the priest's] conduct into a CUTPA violation. If the plaintiff were to demonstrate that the . . . [d]efendants actually authorized [the priest] to engage in sexual intercourse with the plaintiff, then the alleged actions of [the priest] could indeed be found to have been unfair and actionable under CUTPA." Id.
Furthermore, even where the plaintiff brought a direct action against the principal in the form of a negligent supervision claim, the Supreme Court concluded as a matter of law that such negligence was not an unfair or deceptive practice under CUTPA because it did not satisfy the common law requirements that the alleged unfair act be "immoral, unethical, oppressive, or unscrupulous," and that the act "[cause] substantial injury to consumers [(competitors or other businessmen)]." A-G Foods, Inc.v. Pepperidge Farm, Inc., supra, 216 Conn. 200.
The plaintiff presented receipts to support her claim for damages. Without itemizing here the individual items, they included receipts for $367.77 to replace her bed, $682.00 to replace clothing for herself and her daughter, $273.00 for children's equipment and toys, and $100.00 for sundries and small appliances.
She has not replaced a microwave oven for which she paid $99.00, her daughter's highchair for which she paid $30.00, two dressers for her child which she purchased new in 1995 at $100.00, a dresser which she had purchased for herself for $20.00, a CD player bought in 1996 for $150.00 and the two CDs she owned and valued at $15.00 each, a used couch which she bought in 1997 for $25.00, a kitchen table and chairs purchased from a neighbor in 1995 for $35.00, a TV-VCR purchased for $75.00 that "worked," dishes, pots and pans which she valued at about $50.00, a black bomber jacket she bought in 1990 for $50.00 and a newer winter coat for $35.00, her little girl's pink coat at $12.00 and two 6' by 9' brown rugs she bought new in 1996 for $79.00 each.
Lost to her were "a lot of sentimental things" including her high school diploma and photographs of her mother's parents. While I cannot put a monetary value on those items, I have considered that loss and the circumstances of her dispossession in awarding her $1000.00 for her emotional distress.
The plaintiff is awarded compensatory damages in the amount CT Page 14815 of $3,291.00.
I do not award double damages pursuant to General Statutes §47a-46,[5] nor do I award punitive damages in the nature of attorneys fees pursuant to General Statutes §§ 47a-18a[6] or42-110g(d).[7] See Maisenbacker v. Society Concordia,71 Conn. 369, (1899); Kalinowski v. Waddell Reed, Inc., supra.
Tanzer, J.