[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO STRIKE
This lawsuit arises out of a financing agreement between the plaintiff, Princeton Capital Finance Company, LLC (Princeton), and Marketechs, Inc. (Marketechs), in the course of which Princeton loaned Marketechs $2,592,469.76.[1] In consideration for the financing, Marketechs executed eight notes to Princeton and assigned all of its accounts receivable, without limitation, including a substantial receivable due from the defendant, Webster Bank (Webster). In addition, Marketechs granted Princeton a security interest in all of its tangible and intangible assets. Princeton alleges that after Marketechs defaulted on its payment obligation, on February 6, 1996, Princeton and Marketechs gave notice of the assignment to Webster. Despite the notice of assignment, Webster continued to make payments directly to Marketechs in the total amount of $1,666,526.33.
The substitute complaint is brought by Princeton against Webster in five counts alleging conversion (count one), negligence (count two), violation of the Connecticut Unfair Trade Practices Act (CUTPA) (count three), violation of Article 9 of the UCC (count four) and breach of contract (count five). Webster now moves to strike the entire complaint on the grounds that all five counts are insufficiently alleged.[2]
 I
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998); see also Practice Book § 10-39. The court will "take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Jewish Home forthe Elderly of Fairfield County, Inc. v. Cantore, 257 Conn. 531, 538,778 A.2d 93 (2001).
 A Count One — Conversion
Conversion is "[a]n unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The CT Page 1356 essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." (Internal quotation marks omitted.) AetnaLife Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91, 646 A.2d 799
(1994).
Webster argues that count one fails to allege any one of the limited circumstances where money may properly be the subject of conversion. Webster contends that to validly state a claim for conversion of money, including funds in which Princeton has a valid security interest, Princeton must allege an interest in specific funds such as funds that it directly entrusted to Webster or funds in Webster's possession subject to a statutory lien.
Princeton asserts that its claim of a valid security interest in Marketechs' accounts receivables is sufficient to satisfy its right of ownership over funds concerning which Webster exercised dominion and control. Webster further argues that Webster's refusal to disburse these funds to Princeton after receiving notice of the security interest and assignment constituted conversion. In addition, Princeton contends that it has alleged a statutory lien on Marketechs' accounts receivables under the Uniform Commercial Code and, thus, it has sufficiently stated a claim of conversion.
Viewing the complaint in the manner most favorable to sustaining its legal sufficiency, Princeton has sufficiently pleaded a claim of common law conversion. In Omar v. Mezvinsky, 13 Conn. App. 533, 536,537 A.2d 1039, cert. denied, 208 Conn. 803, 545 A.2d 1101 (1988), the Appellate Court held that "[m]oney can clearly be subject to conversion." Although Webster argues that the conversion cases involving money which are cited in Omar fall into only two limited categories,[3] the decision is not so limited.
Princeton alleges that "Marketechs granted Princeton a continuing all asset security interest covering all tangible and intangible assets of Marketechs including . . . all accounts receivable"; (Count one, ¶ 9); that "Webster intended to exercise [and did exercise] dominion and control over the funds in which Princeton had established a valid security interest"; (Count one, ¶¶ 18-19); and that "[t]he actions of Webster in disbursing the funds in disregard of Princeton's valid security interest after the receipt of the Commercial Notice of Assignment constitutes conversion"; (Count one, ¶¶ 20). These allegations are sufficient to state a claim of conversion and, therefore, Webster's motion to strike count one is denied. See Aetna Life Casualty Co. v. Union Trust Co., supra, 230 Conn. 790-91; see alsoConnecticut National Bank v. DiCocco, Superior Court, judicial district CT Page 1357 of Waterbury, Docket No. 91046 (August 13, 1990, Murray, J.) (2 Conn. L. Rptr. 236, 238) (motion to strike conversion claim denied as plaintiff alleged security interest in certificate of deposit).
 B Count Two — Negligence
With respect to count two, Webster argues that it did not owe a duty to Princeton and that the harm Princeton allegedly suffered was not reasonably foreseeable. Webster asserts that it was not reasonably foreseeable that the harm that Princeton allegedly suffered would have resulted from Webster continuing to make payments to Marketechs. Further, Webster argues that making it responsible for Marketechs' default offends public policy.
Princeton claims in opposition that once a party is put on notice of an assignment of rights, a duty is created to ensure that the rights of the assignee are protected. Princeton also alleges that Webster owed a duty to make payment to Princeton for Marketechs' services pursuant to the notice of assignment and that Webster breached that duty by continuing to pay Marketechs.
"The existence of a duty is a question of law. . . . Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Citations omitted.) Shore v. Stonington, 187 Conn. 147, 151-52,444 A.2d 1379 (1982). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375,441 A.2d 620 (1982); see also Gazo v. Stamford, 255 Conn. 245, 251,765 A.2d 505 (2001).
"The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that [it] is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.)Lombard v. Edward J. Peters, Jr., P.C., 252 Conn. 623, 633, 749 A.2d 630
(2000). "The matter of foreseeability is a question of proximate cause. . . ." (Citation omitted.) Gutierrez v. Thorne, 13 Conn. App. 493, 500, CT Page 1358537 A.2d 527 (1988). "The question of proximate causation generally belongs to the trier of fact because causation is essentially a factual issue. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Citations omitted; internal quotation marks omitted.) Stewart v. Federated Dept. Stores, Inc., 234 Conn. 597, 611,662 A.2d 753 (1995).
Taken in a light most favorable to Princeton, the allegations in count two of the substitute complaint sufficiently state a cause of action for negligence. In any event, it is impossible to determine as a matter of law, on a motion to strike, that the minds of fair and reasonable persons could reach only one conclusion regarding Webster's duty (or lack thereof) to Princeton. Derrig v. Thomas Regional Directory Co., Superior Court, judicial district of Hartford, Docket No. 583548 (June 22, 1999,Peck, J.). Thus, Webster's motion to strike count two of the substitute complaint is denied.
 C Count Three — CUTPA
Webster moves to strike count three of the substitute complaint because Princeton's statements are conclusory and do not allege that Webster was attempting to defraud Princeton.
"It is well settled that in determining whether a practice violates CUTPA [the Connecticut Supreme Court has] adopted the criteria set out in the "cigarette rule' by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) Willow Springs CondominiumAssn. Inc. v. Seventh BRT Development Corp., 245 Conn. 1, 43, 717 A.2d 77
(1998).
"A claim under CUTPA must be pleaded with particularity to allow evaluation of the legal theory upon which the claim is based." (Internal CT Page 1359 quotation marks omitted.) S.M.S. Textile Mills, Inc. v. Brown, Jacobson,Tillinghast, Lahan King, P.C., 32 Conn. App. 786, 797, 631 A.2d 340, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). "If a claim does not set forth how or in what respect the [defendant's] alleged activities are either immoral, unethical, unscrupulous or offensive to public policy . . . [a] motion to strike is granted, because a CUTPA claim requires those allegations." (Internal quotation marks omitted.) Computer ClearingHouse, Inc. v. Stamford Computer Group, Inc., Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 164240 (October 5, 1998, D'Andrea, J.). "A conclusory statement . . . without further elaboration . . . is not sufficient to fashion a CUTPA claim." (Internal quotation marks omitted.) Burrows v. Saint Paul's Church, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 171517 (May 3, 2000, D'Andrea, J.).
In support of its CUTPA claim, Princeton incorporates by reference ¶¶ 1 through 20 of count one. In ¶¶ 14 through 16, Princeton alleges that "Webster received a duly executed Commercial Note of Assignment . . . from Princeton . . . (Count three, ¶ 14.) Further, Princeton alleges that "Princeton and Marketechs notified Webster of the assignment and directed Webster to make all further payments to Princeton." (Count three, ¶ 15.) Finally, Princeton alleges that after Webster received the Notice of Assignment "Webster continued to make payments directly to Marketechs. . . ." (Count three, ¶ 16.) Princeton alleges in count three that these acts "were committed knowingly or willfully," "offend public policy," "were immoral, unethical, oppressive or unscrupulous" and "caused substantial damage." (Count three, ¶¶ 23-26.)
The allegations in count three are the same core allegations that Princeton incorporates by reference to support its negligence claim in count two (¶¶ 1 through 15) and its breach of contract claim in count five (¶¶ 1 through 17). Princeton, however, must do more than allege mere negligence or breach of contract to support a CUTPA claim. Allegations of negligence alone are insufficient to support a CUTPA claim. See A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200,214-17, 579 A.2d 69 (1990); Thames River Recycling, Inc. v. Gallo,50 Conn. App. 767, 784-86, 720 A.2d 242 (1998). In addition, even if a breach of contract claim was sufficiently stated, this court agrees with the vast majority of Superior Court decisions concluding that, absent allegations of sufficient aggravating circumstances, "[a] simple breach of contract, even if intentional, does not amount to a violation of [CUTPA]. . . ." (Internal quotation marks omitted.) Derrig v. ThomasRegional Directory Co., supra, Superior Court, Docket No. 583548.
In count three, Princeton merely recites in a conclusory fashion the CT Page 1360 three prongs of the cigarette rule without further elaboration and without a sufficient factual basis to sustain a CUTPA claim. Therefore, Webster's motion to strike count three is granted.
 D Count Five — Breach of Contract
Webster also moves to strike Princeton's breach of contract claim. It contends that this claim is not viable because Princeton fails to allege that Webster was either a party to the contract or a contemplated third party beneficiary of the contract between Marketechs and Webster.
Princeton alleges a contractual agreement between Webster and Marketechs whereby Webster would pay Marketechs for services rendered; (Count five, ¶¶ 18, 19); that Princeton and Marketechs, pursuant to a contractual assignment, notified Webster to make all further payments to Princeton; (Count five, ¶ 20); and finally, that after receiving the notice of assignment from Princeton, Webster failed to pay any amounts to Princeton in breach of its obligations under the contractual agreement with Marketechs, as assigned to Princeton, causing Princeton to suffer damages; (Count five, ¶¶ 21, 22). These allegations do not sufficiently allege a breach of contract between Princeton and Webster.
One who is "neither a party to a contract nor a contemplated beneficiary thereof' cannot sue to enforce a contract. Coburn v. LenoxHomes, Inc., 173 Conn. 567, 570, 378 A.2d 599 (1977). "The law regarding the creation of contract rights in third parties in Connecticut is . . . well settled. In Knapp v. New Haven Road Construction Co., 150 Conn. 321,325, 189 A.2d 386 (1963), [the Supreme Court] . . . reaffirmed that [t]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." (Citation omitted; internal quotation marks omitted.) Gazov. Stamford, supra, 255 Conn. 261. "The requirement that both contracting parties must intend to confer enforceable rights in a third party rests, in part at least, on the policy of certainty in enforcing contracts. That is, each party to a contract is entitled to know the scope of his or her obligations thereunder." (Internal quotation marks omitted.) Id.
The contracts alleged in the complaint are between Marketechs and Webster and between Marketechs and Princeton. The only arguable contractual connection between Princeton and Webster is that of a third CT Page 1361 party. There is no allegation that Princeton was a contemplated beneficiary of either contract. For this reason, Webster's motion to strike count five is granted.
 CONCLUSION
Accordingly, for all the foregoing reasons, Webster's motion to strike counts one and two is denied and the motion to strike counts five is granted.
Peck, J.