BARBARA ALFANO *v.* RANDY'S WOOSTER STREET
PIZZA SHOP II, INC., ET AL.
(AC 24255)
(AC 24256)
Schaller, McLachlan and Berdon, Js

Argued April 22—officially released August 16, 2005

*Joseph A. La Bella*, for the appellant in AC 24255 (named defendant).

*Jack D. Miller*, for the appellant in AC 24256 (defendant Sol J. Cohen, trustee).

*Martin McQuillan*, for the appellee (plaintiff).

*Opinion*

McLACHLAN, J. In these consolidated appeals arising from a premises liability action, the defendants, Randy's Wooster Street Pizza Shop II, Inc. (Randy's), and Sol J. Cohen, appeal from the trial court's granting of a motion to set aside the verdict and for a new trial filed by the plaintiff, Barbara Alfano.[1] We reverse the judgment of the trial court.

[1] The appeal bearing docket number AC 24256 was brought by Cohen challenging the court's judgment setting aside a directed verdict in his favor. He claims specifically that the court improperly set aside the directed verdict in his favor and, in the alternative, if the verdict properly was set aside, the court should not have set aside the portion of the verdict concerning damages when issues of liability and damages were not interrelated. As we conclude that the directed verdict was improperly set aside, we do not address his alternative claim.

The appeal bearing docket number AC 24255 was brought by Randy's from the judgment setting aside the jury's verdict and ordering a new trial. Randy's claims specifically that, where the court directed a verdict in favor of Cohen, the jury was still properly permitted to apportion liability to him and that, therefore, this was an improper ground on which to set aside the directed verdict. Randy's claims in the alternative that even if the verdict properly was set aside, the court improperly set aside the portion of the verdict concerning damages. We do not address this alternative claim for the same reason set forth previously.

Cohen is the owner of certain property located at 777 Queen Street in Southington. Pursuant to the terms of a written lease executed on January 28, 1999, Randy's leased the premises from Cohen, including an adjacent parking lot, with the intention of operating a restaurant at the location.

The terms of the lease required Randy's to "make all necessary repairs to the interior of the . . . premises," but reserved to Cohen all "major structural repairs and replacements." Shortly after the parties entered into the lease, Randy's undertook preparations to the premises to ready it for use as a pizza restaurant. Incident to these preparations, Randy's had an independent contractor reseal the parking area and repaint stripes for the parking spaces, including several handicapped spaces. Although there was a handicapped ramp leading from the sidewalk to the parking area, Randy's made no changes or improvements to the structure of the ramp.

On July 2, 1999, within a few days after Randy's opened to the public, the plaintiff allegedly tripped over the handicapped ramp and fell in the parking lot. As a result of her fall, the plaintiff suffered various physical injuries and ultimately underwent two shoulder surgeries. On December 13, 2001, the plaintiff brought the underlying premises liability action against both defendants. On November 20, 2002, Cohen filed a cross claim against Randy's for breach of contract and both contractual and common-law indemnification for any judgment that might be rendered against him.[2]

Trial on the matter commenced before the jury on December 17, 2002. At trial, the plaintiff offered the testimony of one expert witness, John Kaestle, an archi-

[2] On December 2, 2002, Randy's filed an objection to the cross claim, alleging, inter alia, that Cohen had failed to follow the appropriate procedure for amending the pleadings. It does not appear that the court ever ruled on that objection.

tect who had inspected the premises. He testified that the handicapped ramp was hazardous and not in conformity with applicable code requirements in that the slope of the ramp was significantly steeper than permitted. He further testified that a layperson running a business at that location would not be expected to recognize the noncompliance and the hazardous nature of the ramp.

At the close of the plaintiff's presentation of evidence, Cohen filed a motion for a directed verdict, claiming that the plaintiff had failed either to plead or to present evidence of his possession or control of the subject premises and that, therefore, there was no basis on which the jury could return a verdict against him. The plaintiff then requested that the court permit her to open her case to present additional testimony concerning the language of the lease. The court reserved decision on Cohen's motion for a directed verdict and, the following morning, allowed the plaintiff to call Randy Price, the owner of Randy's, as an additional witness. At that time, excerpts of the lease were introduced into evidence and became part of the record.

Randy's then proceeded to present its case and, after counsel rested, Cohen renewed his motion for a directed verdict. After hearing argument from the parties, the court indicated its intention to grant the motion and stated: "I feel [Cohen] has a valid claim for a directed verdict, and I am giving [him] a directed verdict in this case. And I am not going to send the issue of the liability against [Cohen] to the jury."

The following day, the court submitted the case to the jury. Pursuant to a discussion in chambers that morning, the court went against its statement the previous day and included Cohen on the verdict form, thereby permitting the jury to apportion liability to him. In the jury charge, the court stated: "I have found that, for the plaintiff's purposes, no case had been proved

against [Cohen]. Nevertheless, [Randy's] is permitted to claim that [Cohen] is responsible to the plaintiff, either in whole or in part. That is why you will see— why you will see [Cohen] mentioned in the questions that are going to be presented to you as part of the verdict forms." Later that day, the jury returned a verdict in favor of the plaintiff and found that the damages attributable to her fall were $36,588.50.[3] The jury apportioned 50 percent liability to the plaintiff, 10 percent to Randy's and 40 percent to Cohen. The verdict was accepted and recorded by the court.

By motion dated December 27, 2002, the plaintiff filed a motion to set aside the directed verdict in favor of Cohen and the jury verdict, and requested a new trial. She claimed first that the court improperly directed a verdict for Cohen because she had presented evidence sufficient to make out a prima facie case against him. She claimed also, presumably in the alternative, that even if the court properly directed a verdict in favor of Cohen, the court improperly included Cohen on the verdict form and allowed the jury to apportion liability to him.

On May 2, 2003, the court granted the plaintiff's motion, set aside both the directed verdict in favor of Cohen and the jury verdict, and ordered a new trial. On June 19, 2003, Randy's filed a motion seeking an articulation of the court's decision setting aside the jury's verdict. On July 11, 2002, Cohen filed a motion for articulation of the court's decision setting aside the directed verdict in his favor.

On November 20, 2003, the court issued an articulation. As to its granting of the directed verdict as to

---

[3] The jury found the plaintiff's economic damages to be $34,290 and noneconomic damages to be $22,000, for a total of $56,290. The jury further concluded, however, that 35 percent of those damages was attributable to a subsequent automobile accident and found, accordingly, that the damages attributable to the fall at issue were $36,588.50.

Cohen, the court explained: "At trial, the court found that plaintiff had failed to make her case against . . . Cohen . . . . When counsel for . . . Cohen motioned for a directed verdict, the court reserved decision. This court believes the motion for the directed verdict should have been granted and that the failure to do so at that time constituted error. As no case had been made against [Cohen], the court did eventually grant the motion."

With respect to its decision setting aside the jury's verdict, the court explained: "The case was presented to the jury against defendant Randy's . . . only. . . . Randy's . . . was now at an unfair disadvantage, because the jury was not able to evaluate the possible liability of his codefendant simply because the plaintiff failed to make her case. In an effort to cure this problem, the verdict form included the codefendant. The court believes this was further error. Because of the inconsistency between the directed verdict and the verdict form, counsel for the plaintiff was then at a disadvantage in crafting his final argument, which may have yielded a verdict on liability and damages other than that which may have resulted had the case been correctly submitted."

Cohen then filed a motion for a further articulation of the court's decision setting aside the directed verdict in his favor. The court declined to further articulate its decision unless ordered to do so by this court and, on January 27, 2004, Cohen filed with this court a motion seeking review of the court's refusal. On April 14, 2004, this court ordered the trial court to further articulate its reasoning and, on November 18, 2004, the trial court issued a second articulation in which it explained: "When the court failed to render the directed verdict at the end of the plaintiff's case, as it clearly should have done, the plaintiff's attorney was permitted to address additional evidence. The court continued to

believe that the plaintiff had failed to make her case against defendant Cohen and, ultimately, granted the directed verdict. As noted in the original articulation, however, the court compounded its original error by the manner in which the case was submitted to the jury. At that point, through the fault of this court, the error was so serious, that in the opinion of this court, only a retrial could afford all parties a fair hearing."

These appeals followed. We address each in turn.

I

We first address Cohen's claim that the court improperly set aside the directed verdict in his favor. Cohen argues that there was no legal basis on which the jury could return a verdict against him and, therefore, the court's original determination directing a verdict in his favor should not have been set aside. We agree.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Right* v. *Breen*, 88 Conn. App. 583, 585, 870 A.2d 1131, cert. granted on other grounds, 274 Conn. 905, 876 A.2d 14 (2005).

"Liability for injuries caused by defective premises . . . does not depend on who holds legal title, but rather on who has possession and control of the property." *LaFlamme* v. *Dallessio*, 261 Conn. 247, 251, 802 A.2d 63 (2002); see also *Fernandez* v. *Estate of Ayers*, 56 Conn. App. 332, 335, 742 A.2d 836 (2000). "The word control has no legal or technical meaning distinct from

that given in its popular acceptation . . . and refers to the power or authority to manage, superintend, direct or oversee. . . . [T]he question of whether a defendant maintains control over property sufficient to subject him to . . . liability normally is a jury question. . . . Where the evidence is such that the minds of fair and reasonable persons could reach . . . different conclusions on the question [of control], then the issue should properly go to the jury for its determination." (Citations omitted; internal quotation marks omitted.) *Doty* v. *Shawmut Bank*, 58 Conn. App. 427, 432–33, 755 A.2d 219 (2000). Therefore, in order to prevail on her claim against Cohen on the theory of premises liability, the plaintiff was required to plead and to prove that Cohen was in possession and control of the premises at the time of her fall.

As noted previously, Cohen renewed his motion for a directed verdict at the close of Randy's case on the ground that the plaintiff had failed to plead or to prove possession and control of the subject premises. The plaintiff then brought the court's attention to *Webel* v. *Yale University*, 125 Conn. 515, 522–23, 7 A.2d 215 (1939), and argued that pursuant to that case, Cohen may still be liable if (1) he knew or should have known that conditions existed on the premises that were likely to cause injury to persons entering the premises, (2) the purpose for which the premises are leased involves people being invited on the premises to do business with a tenant and (3) he knew or should have known that the tenant cannot reasonably be expected to remedy or to guard against injury from the defect. The plaintiff argued that she had made a prima facie case against Cohen on the basis of this test.

Cohen countered that the claim being asserted by the plaintiff on the basis of the *Webel* factors was flawed in the same manner as her claim that was based on possession and control in that she failed to plead the

elements of either claim in her complaint and failed to present evidence that would support a verdict against Cohen on such claims. The court agreed that the plaintiff had failed either to plead or to prove a case on the basis of any theory of recovery and granted Cohen's motion for a directed verdict.[4]

Although the court twice articulated its reasoning for setting aside the directed verdict in Cohen's favor, neither articulation clearly elucidated an adequate legal basis for doing so. In both articulations, the court explained that it set aside the directed verdict because it believed the motion should have been granted at an earlier time. The court explained that it should have granted the motion at the time Cohen first filed his motion at the close of the plaintiff's case, rather than reserving decision and hearing additional evidence before granting the motion the following day.

Our case law makes clear that a defendant is entitled to a directed verdict when the court, after viewing the evidence in the light most favorable to the plaintiff, determines that the jury could not reasonably and legally reach any other conclusion than that the defendant is entitled to prevail. See, e.g., *Mariculture Products Ltd.* v. *Certain Underwriters at Lloyd's of London*, 84 Conn. App. 688, 696, 854 A.2d 1100, cert. denied, 272 Conn. 905, 863 A.2d 698 (2004).

Despite twice being afforded the opportunity, the court failed to explain why Cohen was no longer entitled to a directed verdict. In neither of its articulations did the court indicate that it believed the plaintiff had pleaded or proven a viable claim against Cohen under

---

[4] The relevant portion of the plaintiff's complaint alleged only that Cohen "was the record owner of [the premises]." It makes no allegation that Cohen possessed or controlled the premises, which, by contrast, was explicitly alleged in the plaintiff's claim against Randy's. The plaintiff similarly failed to allege any facts that would support any of the *Webel* factors.

any theory of recovery. In fact, the court stated unequivocally in both articulations that the plaintiff had failed to make her case against Cohen.[5]

A mere failure to grant the directed verdict in as timely a manner as the court should have granted it does not provide a sufficient basis for setting aside the directed verdict ultimately granted in Cohen's favor.[6] Although we accord deference to the court's determination setting aside a directed verdict, we must, in the absence of any legal or factual support for its actions, conclude that the court abused its discretion in doing so here.

## II

We next address Randy's claim that the court improperly set aside the verdict on the ground that Cohen should not have been included on the verdict form. Randy's argues that the jury properly was permitted to apportion liability to Cohen and that the verdict should not have been set aside. We agree.

The basis for the court's granting of the motion to set aside the verdict was its inclusion of Cohen on the verdict form when it previously had directed a verdict in his favor. The court explained in its articulation that this inclusion was improper, stating: "Because of the inconsistency between the directed verdict and the verdict form, counsel for the plaintiff was then at a disad-

---

[5] In the first articulation the court stated in relevant part that "no case had been made against . . . Cohen," and in the second articulation that "the plaintiff had failed to make her case against defendant Cohen . . . ."

[6] We agree that the court should have decided the motion for a directed verdict only on the basis of the evidence adduced until the time the motion was made and not on evidence and testimony introduced at any point thereafter. See *Wood* v. *Bridgeport*, 216 Conn. 604, 607, 583 A.2d 124 (1990); see also *Silano* v. *Cumberland Farms, Inc.*, 85 Conn. App. 450, 455, 857 A.2d 439 (2004). There had been no evidence adduced at the time Cohen first filed his motion for a directed verdict from which the jury could have found possession and control.

vantage in crafting his final argument, which may have yielded a verdict on liability and damages other than that which may have resulted had the case been correctly submitted."

Randy's contends, and we agree, that irrespective of the fact that the court directed a verdict in Cohen's favor, the jury properly was permitted to apportion liability to him and properly was instructed by the court in this regard. We reach this conclusion on the basis of the clear principles underlying our apportionment statute.

Under the common law of joint and several liability, if the conduct of a defendant in a case involving multiple defendants is found to be a proximate cause of the plaintiff's injuries, that defendant is liable, jointly and severally, and the plaintiff has the right to recover the entire amount of damages awarded from that defendant, who, in turn, has no right of contribution against the others. Thus, a defendant whose degree of fault is relatively small compared to that of a codefendant can be compelled to pay the entire damages award. See, e.g., *Donner* v. *Kearse*, 234 Conn. 660, 666, 662 A.2d 1269 (1995).

General Statutes § 52-572h supplanted this rule of joint and several liability with a system of apportioned liability in which each defendant is liable for only his proportionate share of damages according to his percentage of negligence that proximately caused the plaintiff's injury. See, e.g., *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 730–31, 778 A.2d 899 (2001). The stated purpose behind the apportionment statute is to prevent any one defendant from having to pay more than his proportional share of the damages. See *Donner* v. *Kearse*, supra, 234 Conn. 669.

In the present case, allowing liability to be apportioned to Cohen promotes this purpose by assuring that

Randy's will be obligated to the plaintiff only for the portion of her damages commensurate with its level of culpability. Were we to endorse the position urged by the plaintiff and conclude that liability should not be apportioned to Cohen, we would force Randy's to bear more than its share of the damages, essentially reverting back to a system of joint and several liability. Such a result would defeat the unambiguous intent of our legislature to eliminate this inequitable system of allocating damages.[7]

---

[7] General Statutes § 52-572h provides in relevant part: "(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person . . . to recover damages resulting from personal injury . . . if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought including settled or released persons under subsection (n) of this section. The economic or noneconomic damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section.

"(c) In a negligence action to recover damages resulting from personal injury . . . if the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for such party's proportionate share of the recoverable economic damages and the recoverable noneconomic damages except as provided in subsection (g) of this section.

"(d) The proportionate share of damages for which each party is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the party's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all parties whose negligent actions were a proximate cause of the injury, death or damage to property including settled or released persons under subsection (n) of this section. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction.

"(e) In any action to which this section is applicable, the instructions to the jury given by the court shall include an explanation of the effect on awards and liabilities of the percentage of negligence found by the jury to be attributable to each party.

"(f) The jury or, if there is no jury, the court shall specify: (1) The amount of economic damages; (2) the amount of noneconomic damages; (3) any findings of fact necessary for the court to specify recoverable economic damages and recoverable noneconomic damages; (4) the percentage of

The judgment is reversed and the case is remanded with direction to reinstate the directed verdict in favor of Cohen and the jury verdict in all respects.

In this opinion the other judges concurred.

negligence that proximately caused the injury . . . in relation to one hundred per cent, that is attributable to each party whose negligent actions were a proximate cause of the injury . . . and (5) the percentage of such negligence attributable to the claimant. . . ."