******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ADRIANA RUIZ ET AL. *v.* VICTORY PROPERTIES, LLC
(SC 18997)

Rogers, C. J., and Palmer, Zarella, McDonald and Espinosa, Js.

Argued December 4, 2013—officially released January 20, 2015

*Louis B. Blumenfeld*, with whom was *Lorinda S. Coon*, for the appellant (defendant Victory Properties, LLC).

*Michael T. Petela*, with whom, on the brief, was *Angelo Cicchiello*, for the appellees (plaintiffs).

*Opinion*

PALMER, J. The plaintiff Olga Rivera (Olga) commenced this negligence action, both in her individual capacity and as next friend and parent of the named plaintiff, Adriana Ruiz (Adriana),[1] against their landlord, the defendant, Victory Properties, LLC,[2] alleging that the defendant was liable for injuries that then seven year old Adriana sustained when her ten year old neighbor, with whom Adriana had been playing in their shared backyard, removed a piece of concrete from that backyard, carried it up to his family's third floor apartment and dropped it onto Adriana's head from a window or the balcony of that apartment. The trial court granted the defendant's motion for summary judgment, concluding that the defendant did not owe Adriana a duty of care because no reasonable juror could find that her injuries were a foreseeable consequence of the defendant's alleged negligence and because imposing liability on the defendant would be contrary to overriding public policy considerations. The plaintiffs appealed to the Appellate Court from the trial court's judgment in favor of the defendant. In a divided opinion, the Appellate Court reversed the trial court's judgment and remanded the case with direction to deny the defendant's summary judgment motion. *Ruiz* v. *Victory Properties, LLC*, 135 Conn. App. 119, 133, 43 A.3d 186 (2012). We then granted the defendant's petition for certification to appeal, limited to the issue of whether the Appellate Court properly reversed the trial court's decision to grant the defendant's motion for summary judgment. *Ruiz* v. *Victory Properties, LLC*, 305 Conn. 922, 47 A.3d 882 (2012). Because we agree with the Appellate Court that the trial court improperly granted the defendant's motion for summary judgment, we affirm the Appellate Court's judgment.

The record reveals the following facts, most of which are undisputed.[3] At all times relevant to this appeal, the defendant owned and managed a six-family apartment building located at 138 North Street in the city of New Britain. Each of the apartments has an open deck overlooking the backyard, which includes a fenced in area that is accessible by a gate. Children who lived in the apartment, along with other visiting children, regularly used that area as a playground, even though it was in very poor condition. In particular, it contained discarded home furnishings and appliances, and an abandoned motor vehicle in a state of complete disrepair. In addition, as a result of the deteriorating concrete sidewalks and retaining walls, chunks of concrete were lying about, along with piles of construction material, trash and rocks. Parents of the children playing in this area were concerned because the children would play with the debris, including the broken concrete. The defendant's owner, who also served as the apartment manager, was aware of the condition of this area

because a tenant had complained to him about it, and he personally observed the area when he visited the property each month to collect rent money. Nevertheless, the defendant made no effort to remove or cordon off the debris so that children playing in the area would not have access to it.

On May 14, 2008, Saribel Cruz resided in a third floor apartment in the building with her ten year old son, Luis Cruz (Luis). Olga and Adriana, who is Saribel Cruz' niece, resided in another apartment in the building. On that day, Luis and Adriana, along with as many as a dozen other children, all of whom were being watched by several adults, were playing in the backyard. Luis decided that he wanted to see if he could break a piece of concrete. To that end, at about 4 p.m., Luis picked up a piece of concrete from the backyard that weighed approximately eighteen pounds, carried it up to his family's third floor apartment, and dropped it from the window or balcony of that apartment to the ground below. Luis saw his cousin Adriana below and yelled, urging her to get out of the way, but the rock struck her on the head, causing very serious injuries, including a crushed skull, traumatic brain injury and paralysis on her right side. As a result of these injuries, Adriana had two surgeries and had been hospitalized for nearly two months.

The plaintiffs subsequently commenced this action against the defendant, alleging that the defendant was negligent in failing to remove the loose concrete and other debris from the backyard of the apartment building, and that this negligence was a cause of Adriana's injuries because it was a substantial factor in producing those injuries.[4] The defendant filed a motion for summary judgment, claiming that, under the circumstances, it did not owe Adriana a duty of care and cannot as a matter of law be held responsible for her injuries. The trial court granted the defendant's motion, concluding that the defendant did not owe Adriana a duty of care because a reasonable landlord in the defendant's position, knowing that there were pieces of broken concrete and other debris in the backyard of the apartment building, would not have foreseen that a child would injure another child by "lugging a [piece of concrete] up to the balcony of the building and pitching [it] off, onto the head of [the other] child . . . ." The trial court further concluded that permitting a jury to find liability under the facts of this case "would likely discourage landlords from renting apartments to families with young children. It would surely drive up the economic costs associated with maintaining and insuring rental properties, without a concomitant benefit of safeguarding against conditions and hazards that are much more prevalent than the one here. . . . [Although] imposing liability on the defendant would surely be a benefit to [Adriana] and her family, the overall economic and societal costs militate against such an impo-

sition in like situations."

The plaintiffs appealed to the Appellate Court from the judgment of the trial court. The Appellate Court reversed the trial court's judgment, concluding that the trial court, in evaluating whether Adriana's injuries were foreseeable, failed to consider whether the harm that she suffered was within the general scope of the risk created by the defendant's failure to remove potentially dangerous debris from the backyard and, instead, improperly focused on the specific manner in which the injuries occurred. See *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 126–27. In other words, the Appellate Court determined that the trial court had framed the nature of the risk in too narrow of terms. See id. In its view, the risk of harm created by the defendant's conduct was not, as the trial court had concluded, a child carrying a piece of concrete to a third floor apartment and dropping it to the backyard below but, rather, that of a child "getting hurt by a large [piece of concrete] thrown by another child," conduct that, according to the Appellate Court, a fact finder reasonably could find to be foreseeable. Id., 127. The Appellate Court further concluded that imposing a duty of care on the defendant was in accord with this state's long-standing public policy requiring a landlord to maintain the common areas of a rental property in a reasonably safe condition, particularly when, as in the present case, the landlord is aware that children regularly play in those areas. See id., 129–30.

Judge Alvord dissented from the majority opinion of the Appellate Court. She agreed with the trial court that the foreseeability inquiry should be characterized more narrowly, that is, "as whether the defendant would reasonably foresee that a ten year old child would pick up an eighteen pound cinder block, carry it up several flights of stairs to the third floor of the apartment building and drop it on the head of [a] seven year old . . . ." (Emphasis omitted.) Id., 137–38 (*Alvord, J.*, dissenting). Believing that such a series of events was not reasonably foreseeable, and that imposing a duty of care on the defendant would lead to increased litigation and drive up the costs of property ownership, Judge Alvord concluded that the defendant owed Adriana no duty of care. Id., 138 and n.7 (*Alvord, J.*, dissenting).

On appeal to this court following our granting of certification, the defendant contends that the Appellate Court incorrectly concluded that the defendant owed Adriana a duty of care and improperly rejected its claim that, even if the defendant did owe her such a duty, the defendant's conduct was not a proximate cause of her injuries. We disagree with both contentions and, accordingly, affirm the judgment of the Appellate Court.

Our analysis of the defendant's claim is governed by the following principles. A cause of action in negligence is comprised of four elements: duty; breach of that

duty; causation; and actual injury. E.g., *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191, 74 A.3d 1278 (2013). Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached. See, e.g., id.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury [that] resulted was foreseeable . . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) Id., 191–92.

Foreseeability is determined in the context of causation, which has two components. With respect to the first component, causation in fact, we ask whether the injury would have occurred but for the actor's conduct. E.g., *Winn* v. *Posades*, 281 Conn. 50, 56, 913 A.2d 407 (2007). The second component of causation is proximate cause. Id. "Because actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions." *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 604, 724 A.2d 497 (1999). "The test for proximate cause is whether the defendant's conduct was a substantial factor in producing the plaintiff's injury. . . . This substantial factor test reflects the inquiry fundamental to all proximate cause questions, namely, whether the harm [that] occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citation omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 321, 852 A.2d 703 (2004).

Additionally, it is well established that a landlord

owes a duty to maintain the common areas of an apartment building in a reasonably safe condition for the benefit of the tenants who reside in the building. See, e.g., *Giacalone* v. *Housing Authority*, 306 Conn. 399, 407–408, 51 A.3d 352 (2012); see also *LaFlamme* v. *Dallesio*, 261 Conn. 247, 256, 802 A.2d 63 (2002) ("[t]he general rule regarding premises liability in the landlord-tenant context is that landlords owe a duty of reasonable care as to those parts of the property over which they have retained control" [internal quotation marks omitted]). "What defines the landlord's duty is the obligation to take reasonable measures to ensure that the space over which it exercises dominion is safe from dangers, and a landlord may incur liability by failing to do so." (Emphasis omitted.) *Giacalone* v. *Housing Authority*, supra, 408. "The ultimate test of the duty is to be found in the reasonable foreseeability of harm resulting from a failure to exercise reasonable care to keep the premises reasonably safe." *Noebel* v. *Housing Authority*, 146 Conn. 197, 200, 148 A.2d 766 (1959). This duty is also codified at General Statutes § 47a-7 (a), which provides in relevant part: "A landlord shall . . . (3) keep all common areas of the premises in a clean and safe condition . . . ."

Finally, whether the injury is reasonably foreseeable ordinarily gives rise to a question of fact for the finder of fact, and this issue may be decided by the court only if no reasonable fact finder could conclude that the injury was within the foreseeable scope of the risk such that the defendant should have recognized the risk and taken precautions to prevent it. See, e.g., *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 331–32 and n.25, 87 A.3d 546 (2014). In other words, foreseeability "becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for reasonable disagreement the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Gutierrez* v. *Thorne*, 13 Conn. App. 493, 501, 537 A.2d 527 (1988). Guided by these principles, we now turn to the merits of the defendant's claims.

The defendant first contends that a landlord's duty to exercise reasonable care in maintaining the common areas of leased premises is inapplicable to the present case because the harm that Adriana suffered was not foreseeable. In support of this contention, the defendant argues that "Connecticut law does not require one to anticipate that a child will misuse an inherently harmless object in a dangerous way," and that the "buckets, trash, rocks and broken concrete pieces" at issue in this case are "no more dangerous than many common objects occurring in nature or appearing routinely in homes [or] yards where children live and play." (Internal quotation marks omitted.) The defendant further contends that, even if such objects could be considered dangerous, Adriana's injuries are not of the kind that

one reasonably would expect to result from the misuse of those objects, and, in any event, public policy militates against imposing a duty under the facts and circumstances presented.

We disagree with the defendant's first argument because we reject its underlying premise, namely, that broken concrete pieces, discarded buckets, rocks and other similar debris are inherently harmless when left in the backyard of an apartment building where children are known to play. Indeed, even the trial court, which ultimately agreed with the defendant that Adriana's injuries were not foreseeable, recognized that, "[i]n a backyard where children routinely play outside, a landlord may have a duty to attempt to prevent foreseeable hazards," which would include a duty "to clean up and remove loose or sharp concrete [on] which a child might twist an ankle or fall and cut herself." In her dissenting opinion in the Appellate Court, Judge Alvord also acknowledged that "[i]t certainly was foreseeable that a child might trip and fall over the debris *or even throw a piece of concrete at another child.*" (Emphasis added.) *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 138 (*Alvord, J.*, dissenting). For our part, we are hard pressed to conceive of any set of circumstances in which it would be reasonable for a landlord, on the basis of his or her belief that pieces of broken concrete pose no inherent danger to children, to allow such debris to accumulate in an area frequented by children at play. Even if we agreed, however, that pieces of broken concrete are inherently harmless, we are aware of no authority that stands for the proposition that a person cannot be held liable for injuries resulting from such objects.[5] For example, magazines and books are the most innocuous of items, but few would argue that they cannot become a fire hazard if allowed to accumulate, over time, in a hallway or attic. Although light bulbs and paper weights are also inherently innocuous, it hardly would be prudent to discard a wheelbarrow full of them in the middle of a playground. On the contrary, as the trial court observed, it is common knowledge that children do not always appreciate the dangers inherent in their surroundings and often will play with objects found lying around. See, e.g., *Wax* v. *Honolulu*, 34 Haw. 256, 259 (1937) ("Not the least of childish instincts is the proclivity [of children] to intermeddle with objects or devices [that] excite their curiosity or suggest means of amusement. And if it may be reasonably anticipated that children might resort for amusement to, or intermeddle with, an object or device, left unguarded in a public park, to the injury of themselves or others and ordinary prudence would counsel precautionary measures to prevent such injury, nonaction in that respect would constitute negligence . . . ."); *Geary* v. *H. P. Hood & Sons, Inc.*, 336 Mass. 369, 370, 145 N.E.2d 716 (1957) ("children at play sometimes throw available objects for various reasons").

Consequently, "[o]ur cases have attempted to safeguard children of tender years from their propensity to disregard dangerous conditions. It definitely has been established by frequent repetition of the statement that the degree of care required of children is such care as may reasonably be expected of children of similar age, judgment and experience. . . . As to the care required of others in relation to children, the same propensity of children has been taken into consideration in evaluating the negligence of these others."[6] (Citations omitted; internal quotation marks omitted.) *Neal* v. *Shiels, Inc.*, 166 Conn. 3, 11, 347 A.2d 102 (1974). This is not to say that an object's intrinsic qualities and character play no role in a duty analysis. Indeed, such considerations may bear significantly on that analysis, but only insofar as they inform the question of whether the harm that occurred was sufficiently foreseeable that the defendant reasonably should have taken steps to prevent it.[7]

As we previously indicated, both the trial court and Judge Alvord, in her dissenting opinion in the Appellate Court, concluded that the harm that befell Adriana in this case was not foreseeable. See *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 134, 138 (*Alvord, J.*, dissenting). Judge Alvord, in particular, reasoned that, although it was foreseeable that a child might throw a piece of concrete at another child, the catastrophic injuries that Adriana sustained were not within the scope of that risk and, therefore, could not reasonably have been anticipated. See id., 138 (*Alvord, J.*, dissenting). On appeal, the defendant urges us to adopt Judge Alvord's reasoning and reject the reasoning of the Appellate Court majority, which, as we have explained, concluded that the trial court and Judge Alvord improperly had framed the foreseeability question too narrowly to encompass only the specific facts of this case, namely, whether it was foreseeable that a ten year old child would carry a heavy piece of concrete from the backyard to a third floor balcony and drop it on Adriana's head. We disagree that the Appellate Court majority's analysis of foreseeability was improper. To the contrary, as this court previously has explained, "[as] long as harm of the general nature as that which occurred is foreseeable there is a basis for liability even though the manner in which the accident happens is unusual, bizarre or unforeseeable." *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 333, 430 A.2d 1 (1980); see also *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 587, 717 A.2d 215 (1998) (*Berdon, J.*, dissenting) (focus of foreseeability inquiry should be "on the general nature of the harm and not the specific manner in which the injury occurred or the conduct of a third party"); *Figlar* v. *Gordon*, 133 Conn. 577, 581–82, 53 A.2d 645 (1947) (foreseeability "does not mean that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the

ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result" [internal quotation marks omitted]). Thus, as the Appellate Court further explained, "[a]lthough a jury might find it not foreseeable that a ten year old child would carry a large [piece of concrete] up to a third floor balcony, throw it off, and hit someone below, defining the harm of the general nature in that way as a matter of law would be too specific; it would transform the general nature of the harm into the specific way in which the harm occurred." (Emphasis omitted.) *Ruiz* v. *Victory Properties, LLC*, supra, 127.

Comment (i) to § 29 of the Restatement (Third) of Torts underscores this point: "Courts often respond to efforts by advocates to employ excessive detail in characterizing the type of harm in order to make it appear more unforeseeable with the dictum that the manner of harm is irrelevant. Factfinders, no doubt, respond to these efforts with their own judgment and common sense to decide the appropriate specificity with which to assess the scope of liability." 1 Restatement (Third), Torts, Liability for Physical and Emotional Harm § 29, comment (i), p. 504 (2010). Although, in some cases, the injury is so remotely or tenuously connected to the conduct of the defendant that it must be deemed unforeseeable as a matter of law, this is not such a case. Because reasonable people can disagree as to whether the defendant should have anticipated that a child playing in the common backyard reasonably might by injured by another child's mishandling of the broken concrete or other debris that had accumulated there, the plaintiff is entitled to have a jury decide that question.

In the present case, the defendant does not dispute that the risk of harm created by its failure to remove the buckets, trash, broken concrete pieces and other debris from the backyard was that children playing in the area might trip on them or throw them at other children. The types of injuries one would expect to result from this type of behavior run the gamut from cuts and bruises to broken bones, concussions and even fractured skulls. Adriana's injuries, although severe, fall squarely along this continuum of harm. That they occurred in an unusual manner, namely, by a child dropping a piece of concrete into the backyard playground from a third floor balcony instead of throwing it while in the backyard, does not alter this fundamental fact. We therefore agree with the Appellate Court that Adriana's injuries were sufficiently foreseeable that it was inappropriate for the trial court to foreclose the foreseeability question as a matter of law.

Of course, "[a] simple conclusion that the harm to the plaintiff was foreseeable . . . cannot by itself mandate a determination that a legal duty exists. Many

harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 594, 945 A.2d 388 (2008). "[I]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 118, 869 A.2d 179 (2005). "[This] totality of the circumstances rule . . . is most consistent with the public policy goals of our legal system, as well as the general tenor of our [tort] jurisprudence." Id., 121.

Relying primarily on the trial court's analysis of the policy issue, the defendant contends that, even if a jury reasonably could conclude that Adriana's injuries were foreseeable, public policy militates against imposing a duty under the circumstances of this case. We disagree with this assertion for several reasons. First, the defendant's analysis fails to give due consideration to the preexisting common-law and statutory duty requiring landlords in this state to maintain the common areas of leased premises in a reasonably safe condition. In light of that duty, the only real issue in this case is whether a compelling reason exists to conclude that this duty is not controlling of the policy question raised by the defendant. Clearly, the first two considerations that bear on that question—the expectations of the participants and the public policy of encouraging participation in the activity under review—do not support the defendant's position. The Appellate Court explained that the activity at issue is a tenant's use of the common area of an apartment building—in this case a backyard—as a place for children to play. See *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 129. The law imposes a duty on landlords to maintain the common areas of rental property in a reasonably safe condition precisely because it is expected that tenants will use those areas for a variety of purposes, including as a place for their children to recreate. Cf., e.g., *Indianapolis Housing Authority* v. *Pippin*, 726 N.E.2d 341, 346 (Ind. App. 2000) (public policy supports imposing duty on owner of multifamily housing complex to consider safety of common areas where children are known to

play). With respect to the public policy of encouraging participation in the activity under review, we agree with the Appellate Court that it is hardly controversial that public policy supports "the maintenance of common areas in properties such as the apartment building in this case, so that children can socialize and play in safe environments. A finding against the imposition of a duty would discourage parents from allowing their children to play and utilize [these] areas . . . . It would also require tenants in such dwellings to exercise a much higher degree of vigilance in monitoring their children's activities in order to prevent exposure to potentially dangerous materials [in areas over which they have no control]. There is certainly a strong public policy in favor of facilitating and encouraging children to play and socialize without forcing an overly heightened degree of vigilance [on] parents."[8] *Ruiz* v. *Victory Properties, LLC*, supra, 130.

With respect to the third policy consideration, avoidance of increased litigation, the defendant argues that, if this court permits a jury to decide whether the defendant breached a duty to the plaintiff by failing to remove the broken pieces of concrete from the backyard, then almost any item found in the common area of an apartment building could be deemed dangerous, including sticks and stones, flower pots, umbrellas or even lawn chairs. The defendant asserts that this will result in landlords being held strictly liable for injuries caused by a wide array of harmless objects, expose all property owners, not just landlords, to increased litigation and property costs, and "encourage an unhealthy 'sanitizing' of areas where children play" in order to avoid such litigation and costs. First, we reject the defendant's contention that imposing a duty under the circumstances of this case is tantamount to imposing strict liability. To the contrary, concluding that a duty exists simply affords the plaintiffs in the present case the opportunity to prove to a jury that Adriana's injuries were foreseeable, that the defendant failed to take reasonable steps to avoid them, and that this failure was a substantial factor in bringing about those injuries. It is by no means clear, however, that the plaintiffs will prevail on any of these components of their claim. As in every negligence action, the jurors will be free to reject the claim if they find, in light of their common knowledge and experience, that Adriana's injuries were not reasonably foreseeable, or that the defendant exercised reasonable care under the circumstances, or that the defendant's conduct was not a substantial factor in causing Adriana's injuries.

Nor do we agree that our resolution of this appeal will lead to a significant increase in litigation or drive up the costs of property ownership, which might occur if we were recognizing a new cause of action or otherwise breaking new ground in the area of premises liability. In the present case, we merely conclude that there

is a triable issue of fact as to whether the defendant breached its duty to maintain the common areas of the plaintiffs' apartment building in a reasonably safe condition, such that the question of liability should be decided by a jury and not by the court as a matter of law. Indeed, we agree with the Appellate Court that, rather than unnecessarily and unwisely increasing litigation, imposing a duty in this case will likely prompt landlords to act more responsibly toward their tenants in the interest of preventing foreseeable harm caused by unsafe conditions in areas where tenants are known to recreate or otherwise congregate. Moreover, the cost of maintaining the common areas of an apartment building in a reasonably safe condition is likely one of the least costly aspects of rental property ownership, and one that the defendant in the present case assumed by virtue of such ownership. We cannot imagine that picking up pieces of loose concrete and other debris that had accumulated in the common backyard, and periodically inspecting the yard for new hazards, would require more than a few hours of manual labor and perhaps the occasional use of a pickup truck.

Finally, we are not persuaded that our conclusion is likely to cause landlords to "sanitize" the common areas where children play, thereby depriving those children of the opportunity to recreate in a fun and enjoyable environment. Our holding requires only that landlords take reasonable steps to protect against foreseeable injuries to children playing in those common areas, and when a landlord is sued for allegedly breaching that duty, summary judgment remains available unless a jury reasonably could determine that the landlord failed to act reasonably under the circumstances.

With respect to the fourth consideration, namely, the decisions of other jurisdictions, the defendant relies primarily on a line of Illinois cases,[9] which, according to the defendant, explains why property owners are not liable for injuries caused by inherently harmless objects. Only one such case, however, involves a claim that a landlord breached its duty to maintain a common area in a reasonably safe condition. See *Cole* v. *Housing Authority*, 68 Ill. App. 3d 66, 67, 385 N.E.2d 382 (1979). All of the cases, moreover, are distinguishable on their facts.[10] Furthermore, as the plaintiffs note, the issue of whether a landowner may be held liable for injuries resulting from inherently harmless objects is far from settled, even in Illinois, for there are a number of appellate cases from that state indicating that the duty inquiry, particularly when the injured plaintiff is a child, must ultimately turn on the foreseeability of the harm rather than the inherently harmless nature of the instrumentality that caused the harm. See, e.g., *Qureshi* v. *Ahmed*, 394 Ill. App. 3d 883, 887, 916 N.E.2d 1153 (2009) ("[i]t is the reasonable foreseeability of harm that determines liability in negligence actions involving children"); *Grant* v. *South Roxana Dad's Club*, 381 Ill. App.

3d 665, 672, 886 N.E.2d 543 (2008) (concluding that issue of duty was not appropriately decided as matter of law because jury reasonably could conclude that harm to trespassing child, who was injured on four foot high pile of dirt, was reasonably foreseeable); *Nelson ex rel. Tatum* v. *Commonwealth Edison Co.*, 124 Ill. App. 3d 655, 663, 465 N.E.2d 513 (1984) ("While foreseeability is . . . a proper matter for a court to consider in making its duty determination . . . foreseeability is a determinative consideration only [when] a particular occurrence is so extreme that, as a policy decision, it would be unwise to require [the] defendant to guard against it. In the majority of cases, [in which] varying inferences are possible from the facts, a court should permit the jury to decide the foreseeability issue, including the foreseeability of the particular cause and effect of [the] plaintiff's injury, as a factual matter in its proximate cause determination." [Citations omitted.]). In any event, we agree with the Appellate Court that, as this court previously has explained, "the decisions of other jurisdictions . . . [are] not particularly helpful because there are multiple ways in which our sister states handle the question of duty with respect to premises liability." *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 130; accord *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 120. Accordingly, the decisions of other jurisdictions, like the other relevant considerations, do not support the defendant's contention that it did not owe Adriana a duty of reasonable care.[11]

We turn, therefore, to the defendant's final claim that, even if it owed Adriana such a duty, its conduct was not a proximate cause of her injuries as a matter of law. In support of this contention, the defendant argues that "[i]t is clear that the conduct of the defendant in permitting debris to accumulate in the backyard was not a direct cause of [Adriana's] injury. The direct and proximate cause was the conduct of Luis . . . ." As the Appellate Court explained, however, "[b]ecause actual causation, in theory, is virtually limitless, the legal construct of proximate cause serves to establish how far down the causal continuum tortfeasors will be held liable for the consequences of their actions. . . . The fundamental inquiry of proximate cause is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct. . . . In negligence cases . . . in which a tortfeasor's conduct is not the direct cause of the harm, the question of legal causation is practically indistinguishable from an analysis of the extent of the tortfeasor's duty to the plaintiff. . . . Therefore, since [the court has] already determined the question of whether a duty was owed by the defendant, it would be repetitive . . . to engage in an analysis concerning proximate cause." (Citation omitted; internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, supra, 135 Conn. App. 133; see

also *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 574 ("[i]t is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm"). Furthermore, as we previously have stated, "[t]he issue of proximate causation is ordinarily a question of fact for the trier. . . . Conclusions of proximate cause are to be drawn by the jury and not by the court. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement, the question is one to be determined by the trier as a matter of fact." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 558, 51 A.3d 367 (2012).

Although we acknowledge that Luis' actions were a direct and substantial cause of Adriana's injuries, and that a jury reasonably could conclude that he bore the brunt of the responsibility for her injuries,[12] it is well established that "[t]he injury resulting from the breach of duty need not be the direct or immediate result of the wrongful act; if it is probable and a natural result, that is according to the operations of natural laws, it is enough. . . . The mere fact that the act of another person concurs, co-operates or contributes, in any degree whatever in producing the injury, is of no consequence . . . . [I]n no case is the connection between an original act of negligence and an injury actually broken if a [person] of ordinary sagacity and experience, acquainted with all the circumstances, could have reasonably anticipated that the [direct cause of the harm] might, not improbably but in the natural and ordinary course of things, follow his act of negligence." *Lombardi* v. *Wallad*, 98 Conn. 510, 517–18, 120 A. 291 (1923); see id., 513–14, 517 (defendant who left trash can fire burning in common area of apartment building could be deemed liable for child's injuries when child playing with fire accidentally set another child on fire). Our determination that a jury reasonably could find that the defendant's alleged negligence also was a substantial factor in causing Adriana's injuries finds support in sister state case law rejecting claims, like that of the defendant in the present case, that the actions of a third party were not a proximate cause of a child's injuries merely because another child directly caused those injuries. See, e.g., *Smith* v. *Eagle Cornice & Skylight Works*, 341 Mass. 139, 141, 167 N.E.2d 637 (1960) (jury reasonably could conclude that leaving axe and other construction materials in courtyard of apartment complex was proximate cause of injuries sustained when child accidentally dropped axe on another child's hand); *Speaks* v. *Housing Authority*, 193 N.J. Super. 405, 408–10, 474 A.2d 1081 (App. Div.) (jury reasonably could find that landlord's failure to repair eighth floor stairwell window was proximate cause of child's injuries after

child was struck by bicycle frame thrown by another child from window), cert. denied, 97 N.J. 655, 483 A.2d 177 (1984); *Mayer* v. *Housing Authority*, 84 N.J. Super. 411, 424–25, 202 A.2d 439 (App. Div. 1964) (jury reasonably could have found that evidence of prior stone throwing in area of housing project designated for recreation of children would render future injury to children foreseeable), aff'd, 44 N.J. 567, 210 A.2d 617 (1965).

We conclude, therefore, that the plaintiffs are entitled to a jury determination of their claim that the defendant bears at least some responsibility for Adriana's injuries. Consequently, we agree with the Appellate Court that the trial court improperly granted the defendant's motion for summary judgment.

The judgment of the Appellate court is affirmed.

In this opinion ROGERS, C. J., and ESPINOSA, J., concurred.

[1] We hereinafter refer to Olga and Adriana collectively as the plaintiffs.

[2] After the plaintiffs commenced the present action, they successfully joined two other defendants, namely, John R. Kovalcik and Interpros, Inc. The trial court rendered judgment in favor of those other defendants, however, after granting their independent motion for summary judgment, and the plaintiffs have not challenged that aspect of the trial court's judgment on appeal. Accordingly, we refer to Victory Properties, LLC, as the defendant throughout this opinion.

[3] To the extent that any facts are disputed, we view those facts, as well as any other relevant facts, in the light most favorable to the plaintiffs. See, e.g., *DiPietro* v. *Farmington Sports Arena*, *LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012) (for purposes of deciding motion for summary judgment, court views facts in light most favorable to nonmoving party).

[4] Specifically, the plaintiffs alleged in their amended complaint that the defendant was negligent in that, inter alia, it (1) "caused, allowed, and/or permitted the debris and loose concrete and cinderblocks to be and remain in a dangerous and unsafe condition," (2) "caused, allowed, and/or permitted the debris and loose concrete and cinderblocks to become and remain loose and defective, causing a hazardous condition," (3) "failed to remedy [this] condition when [such a remedy] was reasonable and necessary under the circumstances," (4) "failed to maintain [the] backyard and property in a reasonabl[y] safe condition for [the] plaintiff[s] and other tenants to walk, play and socialize," and (5) "knew or should have known that the presence of . . . loose debris and concrete caused an unsafe and hazardous condition and that it was foreseeable that the harm caused to [Adriana] was a likely result [of] the defendant's failure to take corrective measures and [to] remedy the hazardous condition . . . ."

[5] In support of its contention to the contrary, the defendant relies on *Goldberger* v. *David Roberts Corp.*, 139 Conn. 629, 96 A.2d 309 (1953), in which the twelve year old plaintiff sought damages from the defendants, which operated a summer camp for children, for injuries that the plaintiff sustained when a fellow camper accidentally struck him while swinging a paddle that broke into two pieces while the two boys were supposed to be resting in a tent. Id., 629–30. We concluded that the failure of camp counselors to monitor the child who swung the paddle, after he was instructed to get rid of the paddle, was not a breach of any duty that the defendants owed the plaintiff. See id., 632–33. Contrary to the assertion of the defendant in the present case, however, we did not state or imply in *Goldberger* that it always is unforeseeable that a child will use an inherently harmless object in a dangerous way. We simply concluded, rather, that, under the facts of *Goldberger*, the defendants owed the plaintiff no duty to prevent the harm that he suffered. See id.

[6] This court also has "adopted the view of § 339 of the Restatement (Second) of Torts that [a] possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition [on] the land if (a) the place where the condition exists is one [on] which the possessor knows or has reason to know that children are likely to trespass, and (b) the condition is one of which the possessor knows or has reason

to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." (Internal quotation marks omitted.) *Dzenutis* v. *Dzenutis*, 200 Conn. 290, 304, 512 A.2d 130 (1986); accord *Duggan* v. *Esposito*, 178 Conn. 156, 158–59, 422 A.2d 287 (1979), quoting 2 Restatement (Second), Torts § 339, p. 197 (1965). "It is a question for the jury to decide if a defendant is maintaining a latently dangerous instrumentality on his premises [that] is so exposed that he may reasonably anticipate that a child is likely to be hurt by it. It is also for the jury to decide if a defendant knows or has reason to know that children are likely to trespass on that portion of his land where the instrumentality is located. . . . Even if there is no evidence that any child had previously trespassed on the site, it remains a jury question whether, based on all of the evidence, the defendants knew or had reason to know that children were likely to trespass on the place where the condition existed." (Citation omitted.) *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 201, 470 A.2d 705 (1984). Of course, a property owner's responsibility to a tenant exceeds the owner's duty to a mere trespasser.

[7] We agree with the plaintiffs, however, that the trial court, in its memorandum of decision, tended to minimize the defendant's culpability by repeatedly referring to the concrete that struck Adriana as a "rock," which, as the plaintiffs argue, suggests a natural rather than artificial condition, and by analogizing the risk of harm in this case to that of a child removing a flower pot from the back porch and dropping it. The plaintiffs argue that this analogy is inapt because "[t]he inappropriateness of stealing and destroying a . . . potted plant would be obvious, even to a ten year old child," whereas the conditions at issue in this case, which included an abandoned motor vehicle, scattered cinder blocks and construction debris, were discarded items that clearly belonged to no one, a difference that also would not have been lost on children playing in the backyard. The plaintiffs contend, and we agree, that the appropriate analogy would be to a child removing the battery from the abandoned vehicle and dropping it on a playmate.

[8] We reject the defendant's suggestion that a "reasonably safe" environment in an urban setting has a different meaning than in other settings, such that the expectation of urban tenants is that landlords will keep the common areas "devoid of . . . objects like needles, broken glass, and explosives" but not harmless objects that can cause injury only if mishandled. First, as we previously discussed, we do not agree with the defendant's characterization of the debris at issue in this case as inherently harmless when left in an area where children routinely play. Even if we did, however, the defendant has cited no authority for the proposition that urban landlords are held to a lesser standard of care than their suburban or rural counterparts, one requiring them to maintain the common areas under their control free of only the most noxious and inherently dangerous of items, such as explosives or used needles. Suffice it to say that we do not believe an object that poses a danger to children in a suburban backyard becomes less dangerous to them merely because it is discarded in an urban backyard.

[9] See *Winnett* v. *Winnett*, 57 Ill. 2d 7, 8, 13, 310 N.E.2d 1 (1974) (trial court properly dismissed complaint alleging, inter alia, that manufacturer of conveyor belt located on farm was strictly liable for injuries suffered by farm owner's four year old granddaughter when she placed her hand in or on conveyor belt because manufacturer reasonably could not have foreseen that child would have access to belt); *Cole* v. *Housing Authority*, 68 Ill. App. 3d 66, 67, 69, 71–72, 385 N.E.2d 382 (1979) (defendant housing authority was not liable for injuries sustained by child who resided in housing project owned and operated by defendant when child was playing in construction area within housing project that children were prohibited from accessing and was struck by metal stake, used in connection with ongoing construction, that another child had found at site and swung or threw, and defendant had no duty to ensure that children did not gain access to such stakes when company performing construction work placed barricades with yellow flashers around construction site and picked up stakes at end of each work day); *Reeves* v. *Springfield*, 5 Ill. App. 3d 880, 880–83, 284 N.E.2d 373 (1972) (defendant city was not liable for five year old child's injuries that he sustained when another young child picked up discarded license plate from

public alley and threw it at five year old, striking him in eye, because city had no duty to "constantly inspect and clean up its 108 miles of alleys, and to remove all items with which a child could be injured"); *Kos* v. *Catholic Bishop*, 317 Ill. App. 248, 249, 252–53, 45 N.E.2d 1006 (1942) (parochial school not liable for injuries sustained by student when she was struck by brush used to clean floors that another student had thrown, as record contained nothing to indicate that brush was dangerous or stored in inappropriate place).

[10] The defendant also cites to *Geary* v. *H. P. Hood & Sons*, *Inc.*, supra, 336 Mass. 369–71 (defendant milk company, whose employee delivered milk to grade school and left several pounds of ice on top of milk containers delivered to school, was not liable when nine year old student took piece of ice and threw it to ground, causing ice fragment to break off and cause injury to another student, because injury was not foreseeable), *Foss* v. *Kincade*, 766 N.W.2d 317, 319, 322–23 (Minn. 2009) (defendant homeowners were not liable for injuries sustained when freestanding bookshelf fell on and injured three year old child who was visiting defendants' home because defendants did not know of child's proclivity to climb on bookshelves, and, therefore, child's injuries were not reasonably foreseeable), and *Chavez* v. *Desert Eagle Distributing Co. of New Mexico*, *LLC*, 141 N.M. 116, 119, 123–26, 151 P.3d 77 (App. 2006) (distributors who sold alcohol to casino knowing that casino intended to serve alcohol continuously for twenty-four hour period were not liable to passengers of vehicle struck by intoxicated driver who had been served alcohol at casino during that twenty-four hour period and while he was intoxicated because passengers' injuries were not foreseeable consequence of distributors' sale of alcohol to casino), cert. denied, 141 N.M. 164, 152 P.3d 151 (2007). These cases, two of which do not involve premises liability, are also readily distinguishable and provide even less support for the defendant's policy arguments than the Illinois cases on which the defendant primarily relies. See footnote 9 of this opinion. Indeed, more than anything else, these cases illustrate that foreseeability is a highly fact-sensitive issue that most often is not susceptible to resolution through summary judgment.

[11] Because the sister state cases on which the dissent relies are readily distinguishable on their facts, they, too, provide no support for rejecting the plaintiff's claim on public policy grounds. Nor do they "[weigh] heavily . . . against imposing a duty on the defendant," as the dissent asserts. For example, in *Indian Acres of Thornburg, Inc.* v. *Denion*, 215 Va. 847, 213 S.E.2d 797 (1975) (*Indian Acres*), the Supreme Court of Virginia concluded that the owner and developer of certain property on which a silo was being converted into an observation tower could not be held liable for injuries sustained by the victim when she was struck by a piece of concrete rock that a young boy, who had climbed to the top of the tower while it was still under construction, dropped to the ground below. Id., 848–51. In reversing the judgment that the trial court had rendered in accordance with the jury verdict in favor of the victim, the Supreme Court of Virginia explained that, even though the property owner and developer had permitted rocks and other debris, including the rock that struck the victim, to accumulate at the base of the structure, the owner and developer "was not required to eliminate all excess construction materials from the site, *while construction was still in progress*." (Emphasis added.) Id., 850. Because the injury in the present case was sustained on a backyard playground, and not on an active construction site, as in *Indian Acres*, the two cases are materially different.

The other case on which the dissent primarily relies, namely, *Englund* v. *Vital*, 838 N.W.2d 621 (S.D. 2013), is similarly inapposite. In *Englund*, the injured victim, a young girl, was struck by a rock thrown by her neighbor, a young boy, who resided with his parents in a rental property owned by the defendant Robert Smith. Id., 624–26. The victim's parents filed an action against Smith, among others, on the victim's behalf, alleging that the rock that the neighbor threw at the victim constituted debris from landscaping work that Smith was performing on the rental property, that Smith knew that the neighbor had a propensity to throw rocks, and that Smith had indicated that he would remove the rocks from the rental property but did not do so. Id., 625–26. The victim's parents alleged that Smith's failure to remove the rocks was a breach of the duty he owed the victim to protect her from the neighbor's propensity to throw rocks. Id., 628–29. The South Dakota Supreme Court affirmed the trial court's judgment rendered in favor of Smith, concluding that Smith could not be held liable for the victim's injuries, first, because he had ceded control of the rental property to the

neighbor's parents; id.; and, second, because, even though he knew that the neighbor sometimes threw rocks, he could not have foreseen the neighbor's intentional or criminal misconduct in throwing a rock at a person. Id., 629–30. It is clear that there is nothing in the court's decision in *Englund* that bears even remotely on the proper resolution of the present case.

[12] We note that "General Statutes § 52-572h supplanted [the] rule of joint and several liability with a system of apportioned liability in which each defendant is liable for only his proportionate share of damages according to his percentage of negligence that proximately caused the plaintiff's injury. . . . The stated purpose behind the apportionment statute is to prevent any one defendant from having to pay more than his proportional share of the damages." (Citation omitted.) *Alfano* v. *Randy's Wooster Street Pizza Shop II, Inc.*, 90 Conn. App. 766, 777, 881 A.2d 379 (2005). Even when the defendant in a negligence action has failed to file an apportionment complaint, a jury still may consider the negligence of unnamed parties in determining the share of damages attributable to the defendant. See, e.g., *Archambault* v. *Soneco/Northeastern, Inc.*, 287 Conn. 20, 37, 946 A.2d 839 (2008) ("A defendant is entitled to try to convince the jury that not only did it not cause [the] plaintiff's injuries, but someone else did. A void of evidence concerning the [nonparty's] conduct would leave a logical hiatus in the story presented to the jury. With no one allowed to show what part the [nonparty's] conduct played, the jury would be left to wonder whether anyone other than the defendant could have caused [the] plaintiff's injuries. . . . Thus, the defendant . . . [is] entitled to show that the [nonparty's] negligence was the sole proximate cause of the plaintiff's injuries." [Citation omitted; emphasis omitted; internal quotation marks omitted.]).